# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MOUN KEODALAH and AUNG KEODALAH, husband and wife, | No. 75731-8-I |
| Petitioners, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| ALLSTATE INSURANCE COMPANY, a corporation, and TRACEY SMITH and JOHN DOE SMITH, wife and husband, | |
| Respondents. | FILED: March 26, 2018 |

LEACH, J. — This court accepted Moun Keodalah's request for discretionary review of the trial court's dismissal of his bad faith and Consumer Protection Act (CPA)[1] claims against Tracey Smith, the Allstate insurance adjustor who handled his claim. RCW 48.01.030 imposes a duty of good faith on all persons engaged in the business of insurance, including individual adjusters. And the CPA does not require that a contractual relationship exist between the parties. Thus, we hold that an individual insurance adjuster may be liable for bad faith and CPA violations. We reverse and remand for further proceedings consistent with this opinion.

---

[1] Ch. 19.86 RCW.

FACTS

Keodalah and a motorcyclist collided in April 2007. After Keodalah stopped at a stop sign and began to cross the street in his truck, a motorcyclist struck him. The collision killed the motorcyclist and injured Keodalah. Keodalah had purchased auto insurance from Allstate Insurance Company. Keodalah's insurance policy provided underinsured motorist (UIM) coverage. The motorcyclist was uninsured.

The Seattle Police Department (SPD) investigated the collision. The SPD determined the motorcyclist was traveling between 70 and 74 m.p.h. in a 30 m.p.h. zone. SPD reviewed Keodalah's cell phone records. They showed that Keodalah was not using his cell phone at the time of the collision.

Allstate also investigated the collision. Allstate interviewed several witnesses who said the motorcyclist was traveling faster than the speed limit, had proceeded between cars in both lanes, and had "cheated" at the intersection. Allstate hired an accident reconstruction firm, Traffic Collision Analysis Inc. (TCA), to analyze the collision. TCA found that Keodalah stopped at the stop sign, the motorcyclist was traveling at a minimum of 60 m.p.h., and the motorcyclist's "'excessive speed'" caused the collision.

Keodalah asked Allstate to pay him the limit of his UIM policy, $25,000. But Allstate refused. It offered $1,600 to settle the claim based on an

assessment that Keodalah was 70 percent at fault. After Keodalah asked Allstate to explain its evaluation,[2] Allstate increased its offer to $5,000.

Keodalah sued Allstate, asserting a UIM claim. Allstate designated Smith as its CR 30(b)(6) representative. Although Allstate possessed both the SPD report and TCA analysis, Smith claimed that Keodalah had run the stop sign and had been on his cell phone. Smith later admitted, however, that Keodalah had not run the stop sign and had not been on his cell phone. Before trial, Allstate offered Keodalah $15,000 to settle the claim. Keodalah refused and again requested the $25,000 policy limit. The case proceeded to a jury trial.

At trial, Allstate contended that Keodalah was 70 percent at fault. The jury determined the motorcyclist to be 100 percent at fault and awarded Keodalah $108,868.20 for his injuries, lost wages, and medical expenses.

Keodalah filed a second lawsuit against Allstate and included claims against Smith. These included IFCA violations, insurance bad faith, and CPA violations. Allstate and Smith moved to dismiss the complaint under CR 12(b)(6). The trial court granted the motion in part. It dismissed Keodalah's claims against Smith and certified the case for discretionary review under RAP 2.3(b)(4).[3]

---

[2] He made this request under the Washington Insurance Fair Conduct Act (IFCA), RCW 48.30.010-.015.

[3] This court may accept discretionary review where "[t]he superior court has certified . . . that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review

This court granted discretionary review of the three issues: (1) whether IFCA creates a private cause of action for violation of a regulation, (2) whether an individual insurance adjuster may be liable for bad faith, and (3) whether an individual insurance adjuster may be liable for violation of the CPA. Later, our Supreme Court decided Perez-Crisantos v. State Farm Fire & Casualty Insurance Co.,[4] which forecloses Keodalah's IFCA claim. We now decide the other two issues involving bad faith and the CPA.

## ANALYSIS

The two issues before this court present unresolved legal questions on which courts have divided.[5] We review legal questions de novo.[6]

### Bad Faith

First, we must decide whether insureds may bring bad faith claims against individual insurance adjusters. RCW 48.01.030 imposes a duty of good faith on "all persons" involved in insurance, including the insurer and its representatives.

---

of the order may materially advance the ultimate termination of the litigation." RAP 2.3(b)(4).

[4] 187 Wn.2d 669, 672, 389 P.3d 476 (2017) (holding that the IFCA does not create an independent private cause of action for violation of a regulation).

[5] Smith makes two arguments to show that she should prevail. She asserts that the statutes of limitations bar the action and that she cannot be liable for conduct in an earlier litigation. But because we did not accept discretionary review of these issues, we do not consider them. See Johnson v. Recreational Equip., Inc., 159 Wn. App. 939, 959 n.7, 247 P.3d 18 (2011); City of Bothell v. Barnhart, 156 Wn. App. 531, 538 n.2, 234 P.3d 264 (2010), aff'd, 172 Wn.2d 223, 257 P.3d 648 (2011).

[6] King v. Snohomish County, 146 Wn.2d 420, 423-24, 47 P.3d 563 (2002).

> The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of insurance.[7]

A person who violates this duty may be liable for the tort of bad faith.[8] RCW 48.01.070 defines "person" as "any individual, company, insurer, association, organization, reciprocal or interinsurance exchange, partnership, business trust, or corporation." Smith was engaged in the business of insurance and was acting as an Allstate representative. Thus, under the plain language of the statute, she had the duty to act in good faith. And she can be sued for breaching this duty.

Division Three used this analysis in <u>Merriman v. American Guarantee & Liability Insurance Co.</u>[9] <u>Merriman</u> interpreted the insurance bad faith statute to permit claims against corporate insurance adjusters.[10] The court reasoned,

> RCW 48.01.030 unambiguously applies to "[t]he business of insurance," imposing requirements on "all persons," and rests the duty of preserving inviolate the integrity of insurance on, among others, "[the] representatives" of the insurer. "Person" is defined by RCW 48.01.070 to mean "any individual, company, insurer,

---

[7] RCW 48.01.030.

[8] <u>Ellwein v. Hartford Accident & Indem. Co.</u>, 142 Wn.2d 766, 775, 15 P.3d 640 (2001), <u>overruled on other grounds by</u> <u>Smith v. Safeco Ins. Co.</u>, 150 Wn.2d 478, 78 P.3d 1274 (2003).

[9] 198 Wn. App. 594, 396 P.3d 351 (2017), <u>review denied</u>, 189 Wn.2d 1038 (2018).

[10] <u>Merriman</u>, 198 Wn. App. at 612.

association, organization, reciprocal or interinsurance exchange, partnership, business trust, or corporation." As an adjuster contracted by American Guarantee to act as its claims administrator, York was, at all relevant times, a "person" engaged in "the business of insurance" and a representative of American Guarantee.[11]

In Lease Crutcher Lewis WA, LLC v. National Union Fire Insurance Co.,[12] a federal district court judge applied a similar analysis. The Lease court reasoned,

> The insurance code of Washington applies to "all insurance transactions . . . and all persons having to do therewith . . . ." [RCW 48.01.020]. "Persons" is defined to include corporations such as AIG Domestic Claims. RCW 48.01.070. More importantly, the legislature has expressly imposed an obligation of good faith on those who represent insurers and insureds.[13]

Lease went on to observe that the plaintiff alleged that the corporate adjuster "acted on behalf of and with authority from" the insurer.[14]

Smith attempts to distinguish our case. She correctly notes that it involves an individual insurance adjuster while Merriman and Lease involved third-party companies adjusting claims. We do not find this distinction significant. Both Merriman and Lease relied on the broad statutory definition of "person" to decide that corporate adjusters owe a duty of good faith. The code's broad definition of

---

[11] Merriman, 198 Wn. App. at 611-12 (alterations in original).
[12] No. C08-1862RSL, 2009 WL 3444762 (W.D. Wash. Oct. 20, 2009).
[13] Lease, 2009 WL 3444762, at *2. Lease mistakenly cites RCW 48.10.020 instead of RCW 48.01.020 for the quoted language about the scope of the code.
[14] Lease, 2009 WL 3444762, at *2.

"person" includes both individuals and corporations and does not make any distinction between the duties they owe. Nothing in the statute limits the duty of good faith to corporate insurance adjusters or relieves individual insurance adjusters from this duty. The duty of good faith applies equally to individuals and corporations acting as insurance adjusters.

Smith relies on Garoutte v. American Family Mutual Insurance Co.[15] There, a different federal district court judge reached a different conclusion. Garoutte does not persuade us. Garoutte specifically relied on the following sentence: "Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of insurance."[16] The court stated that "the text of this sentence makes clear that it does not create a cause of action against representatives of insurance companies; otherwise, it would also create a cause of action for bad faith against "'the insured.'"[17] But Washington courts have expressly stated that the statute does impose a duty of good faith on both the insureds and the insurer.[18] Garoutte also found the

_____

[15] No. C12-1787MJP, 2013 WL 231104, at *2 (W.D. Wash. Jan. 22, 2013).
[16] RCW 48.01.030, cited in Garoutte, 2013 WL 231104, at *2.
[17] Garoutte, 2013 WL 231104, at *2.
[18] Mahler v. Szucs, 135 Wn.2d 398, 414, 957 P.2d 632 (1998) ("Both insurer and insured, having entered into an insurance contract, are bound by the common law duty of good faith and fair dealing, as well as the statutory duty 'to practice honesty and equity in all insurance matters.' RCW 48.01.030."), overruled on other grounds by Matsyuk v. State Farm Fire & Cas. Co., 173 Wn.2d 643, 272 P.3d 802 (2012); Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc., 132 Wn. App. 803, 810, 134 P.3d 240 (2006) ("Both insurer and

distinction between a corporate adjuster and individual employee adjuster significant. But the court did not explain this significance and merely stated that Lease "explicitly confined its reasoning to the duties of third-party corporate entities, not to individuals directly employed by insurers."[19] Lease stated that it need not decide "whether [RCW 48.01.030] gives rise to a bad faith claim against individuals directly employed by the insurer."[20] But the reasoning in Lease applies equally to claims against individuals. Lease determined that insurance adjusters are representatives, who owe a duty of good faith under RCW 48.01.030.[21] Just as corporate insurance adjusters are representatives, so too are individual employee insurance adjusters.

Smith urges us to use the Washington Administrative Code (WAC) to interpret the relevant statutory language. She contends that the regulations apply only to "insurers" and if the legislature had meant the duty of good faith to

---

insured are obligated to exercise good faith." (citing RCW 48.01.030)), rev'd on other grounds, 161 Wn.2d 903, 169 P.3d 1 (2007); see also St. Paul Fire & Marine Ins. Co. v. Onvia, Inc., 165 Wn.2d 122, 130, 196 P.3d 664 (2008) (noting that the good faith duty exists between an insurer and an insured).

[19] Garoutte, 2013 WL 231104, at *2.

[20] Lease, 2009 WL 344762, at *2 n.1 (distinguishing the issue in Rice v. State Farm Mut. Auto. Ins. Co., No. C05-5595RJB, 2005 WL 2487975 (W.D. Wash. Oct. 7, 2005)). A later decision by the same district court judge assumed for purposes of the decision that an employee of an insurance company owes a duty of good faith under RCW 48.01.030. See Ro v. Everest Indem. Ins., C16-0664RSL, 2016 WL 4193868, at *2 (W.D. Wash. Aug. 9, 2016) (distinguishing Lease, 2009 WL 344762, on a different basis).

[21] Lease, 2009 WL 344762, at *2.

-8-

apply to employees it could have said so.[22] We agree that the regulations focus on insurers. But the insurance code is broader and expressly applies to "all persons" having to do with insurance transactions.[23] In addition, the regulations specifically state, "This regulation is not exclusive, and acts performed, whether or not specified herein, may also be deemed to be violations of specific provisions of the insurance code or other regulations."[24] Thus, the regulations do not purport to alter the plain meaning of RCW 48.01.030. And they could not.[25]

---

[22] See WAC 284-30-310.

[23] RCW 48.01.020 ("All insurance and insurance transactions in this state, or affecting subjects located wholly or in part or to be performed within this state, and all persons having to do therewith are governed by this code.").

[24] WAC 284-30-310.

[25] Lease also considered and rejected this argument:

Although courts regularly consider administrative rules when resolving ambiguities in a statute, they "should not defer to an agency's interpretation of a statute if that interpretation conflicts with the statutory mandate." Bostain v. Food Exp., Inc., 159 [Wn.]2d 700, 727, 153 P.3d 846 (2007). In this case, the statute is unambiguous: both the insurer and its representative must act in good faith toward the insured. If the regulations stated otherwise, the administrative agency would have exceeded its power by promulgating rules that amend or change the legislative enactment. Wash. Pub. Ports Ass'n v. Dep't of Revenue, 148 [Wn.]2d 637, 646, 62 P.3d 462 (2003). The issue is inapposite, however, because the regulations do not, in fact, contradict the statutory mandate. Although the administrative agency has chosen to focus its regulations on the conduct of insurers, at least one regulation expressly governs the conduct of an insurer's agent (WAC 284-30-350(2)). In addition, the regulations are not exclusive: "acts performed, whether or not specified herein, may also be deemed to be violations of specific provisions of the insurance code or other regulations." WAC 284-30-310. Thus, the regulations do not preclude a finding that

Finally, Smith asserts that she cannot be liable because she was acting within the scope of her employment. She relies on Annechino v. Worthy[26] for the proposition that an employee is personally liable to a third party only when that agent owes a duty to the third party. Annechino does not support Smith's position because, as explained above, she did owe a duty to Keodalah. RCW 48.01.030 imposed a duty of good faith on Smith, not just on her employer. Smith cannot avoid personal liability for bad faith on the basis of her employment.

In sum, we agree with Division Three's decision in Merriman and further hold that RCW 48.01.030 imposes a duty of good faith on corporate and individual insurance adjusters alike.

## CPA

Next, we consider whether Smith can be liable for a violation of the CPA. The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[27] The CPA serves to deter unfair or deceptive acts or practices, protect the public, and foster fair and

---

an adjuster must act in good faith pursuant to the clear mandate
of RCW 48.01.030.
Lease, 2009 WL 3444762, at *2 (distinguishing Rice, 2005 WL 2487975).

[26] 175 Wn.2d 630, 638, 290 P.3d 126 (2012) ("[A]n agent is subject to tort liability to a third party harmed by the agent's conduct only when the agent's conduct breaches a duty that the agent owes to the third party." (quoting RESTATEMENT (THIRD) OF AGENCY § 7.02) (AM. LAW INST. 2006))).

[27] RCW 19.86.020.

honest competition.[28] The legislature has stated that the CPA is to be "liberally construed [so] that its beneficial purposes may be served."[29]

The Supreme Court described the elements of a CPA claim in Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co.[30] To prevail on a CPA claim, a plaintiff must show (1) an unfair or deceptive act or practice, (2) that act or practice occurs in trade or commerce, (3) a public interest impact, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury.[31]

Smith claims that this court has added a sixth element to the five Hangman Ridge elements: the parties must have a contractual relationship. She relies on this court's opinion in International Ultimate, Inc. v. St. Paul Fire & Marine Insurance Co.[32] International Ultimate stated, without supporting authority, that "[t]o be liable under the CPA, there must be a contractual relationship between the parties."[33] International Ultimate then determined that

---

[28] RCW 19.86.920 ("The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition."); Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc., 64 Wn. App. 553, 564, 825 P.2d 714 (1992) (stating that "the clear purpose of the CPA is to deter and protect against unfair or deceptive acts or practices").

[29] RCW 19.86.920.

[30] 105 Wn.2d 778, 719 P.2d 531 (1986).

[31] Hangman Ridge, 105 Wn.2d at 780.

[32] 122 Wn. App. 736, 87 P.3d 774 (2004).

[33] Int'l Ultimate, 122 Wn. App. at 758.

an insured could not sue an insurer's adjuster because "the CPA does not contemplate suits against employees of insurers."[34] But International Ultimate is inconsistent with the Washington Supreme Court's more recent decision in Panag v. Farmers Insurance Co. of Washington.[35] In Panag, our Supreme Court declined to add a sixth element to the Hangman Ridge test that would require proof of a consumer transaction between the parties.[36] The court reasoned that requiring a consumer relationship is inconsistent with the plain language of the CPA and undermines the purposes it serves.[37]

> The CPA itself, the purposes for which it was enacted, and our cases do not support the argument that a CPA claim must be predicated on an underlying consumer or business transaction. The CPA allows "*[a]ny person* who is injured in his or her business or property by a violation" of the act to bring a CPA claim. RCW 19.86.090 (emphasis added). Nothing in this language requires that the plaintiff must be a consumer or in a business relationship with the actor.[38]

We cannot reconcile International Ultimate with Panag. And we must follow the Supreme Court's more recent controlling decision.

---

[34] Int'l Ultimate, 122 Wn. App. at 758.

[35] 166 Wn.2d 27, 204 P.3d 885 (2009).

[36] Panag, 166 Wn.2d at 38.

[37] Panag, 166 Wn.2d at 39.

[38] Panag, 166 Wn.2d at 39. Further, the Supreme Court has allowed CPA claims to proceed in other circumstances when no contractual relationship between the parties exists. In deeds of trust cases, for example, a mortgagee may bring a CPA claim against the trustee though no direct contract exists between them. Lyons v. U.S. Bank Nat'l Ass'n., 181 Wn.2d 775, 794, 336 P.3d 1142 (2014); Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 782-83, 295 P.3d 1179 (2013).

Merriman uses this analysis. Merriman explained,

> The International Ultimate court provided no authority for that statement; it conflicts with our Supreme Court's identification of the five elements of a CPA claim in Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986), and later cases; and it cannot survive the Supreme Court's holding in Panag that a CPA claim need not arise from a consensual business transaction or a business relationship. Panag, 166 Wn.2d at 38-39.[39]

Keodalah need not show the existence of a contractual relationship with Smith to establish a CPA claim against her.

The other cases Smith cites do not persuade us. Smith cites the federal district court cases Garoutte, Collins v. Quintana,[40] and Grant v. Unigard Indemnity Co.[41] that hold no cause of action exists against the employee of an insurance company. But these cases relied on International Ultimate, which we do not follow, and the Ninth Circuit decision, Mercado v. Allstate Insurance Co.,[42] which is distinguishable. In conclusion, individual insurance adjusters can be liable for a violation of the CPA.

---

[39] Merriman, 198 Wn. App. at 626 n.11.

[40] No. C15-1619RAJ, 2016 WL 337262, at *4 (W.D. Wash. Jan. 28, 2016) (bad faith claim).

[41] No. CV14-00198BJR, 2014 WL 12028484, at *2 (W.D. Wash. July 29, 2014) (CPA claim).

[42] 340 F.3d 824 (9th Cir. 2003). Mercado applied the California rule that insurance agents are not independently liable for negligent failure to provide adequate insurance. Mercado, 340 F.3d at 826. Here, by contrast, and as explained above, an agent can be individually liable for insurance bad faith and under Washington's CPA.

## CONCLUSION

We reverse. We hold that an individual employee insurance adjuster can be liable for bad faith and a violation of the CPA. We remand to the trial court for further proceedings consistent with this opinion.

_Leach, J._

WE CONCUR:

_Spearman, J._                _Cox, J._