

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE OCT 0 3 2019

~~Fairhurst, CJ~~
CHIEF JUSTICE

This opinion was
filed for record
at 8am on Oct 3 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| MOUN KEODALAH and AUNG KEODALAH, husband and wife, | ) ) | No. 95867-0 |
| Plaintiffs-Respondents, | ) ) |  |
| v. | ) ) |  |
|  | ) ) | En Banc |
| ALLSTATE INSURANCE COMPANY, a corporation, and TRACEY SMITH and JOHN DOE SMITH, husband and wife, | ) ) ) ) |  |
| Defendants-Petitioners. | ) ) | Filed OCT 0 3 2019 |
|  | ) |  |

MADSEN, J.—At issue in this underinsured motorist case is whether RCW 48.01.030 provides a basis for an insured's bad faith and Consumer Protection Act (CPA), chapter 19.86 RCW, claims against an employee claims adjuster. For the reasons discussed below, we hold that such claims are not available and reverse the Court of Appeals.

## FACTS

While driving his truck, Moun Keodalah and an uninsured motorcyclist collided in April 2007. After Keodalah stopped at a stop sign and began to cross the street, the

motorcyclist struck Keodalah's truck. The collision killed the motorcyclist and injured Keodalah. Keodalah carried auto insurance with Allstate Insurance Company that included underinsured motorist (UIM) coverage.

The Seattle Police Department (SPD) investigated the collision and determined that the motorcyclist was traveling between 70 and 74 m.p.h. in a 30 m.p.h. zone. SPD also reviewed Keodalah's cell phone records, which showed that Keodalah was not using his cell phone at the time of the collision.

Allstate also investigated the collision, interviewing several witnesses who said the motorcyclist was traveling faster than the speed limit, had proceeded between cars in both lanes, and had sped into the intersection. Allstate hired an accident reconstruction firm, Traffic Collision Analysis Inc. (TCA), to analyze the collision. TCA found that Keodalah stopped at the stop sign, the motorcyclist was traveling at a minimum of 60 m.p.h., and the motorcyclist's excessive speed caused the collision.

Keodalah asked Allstate to pay him his UIM policy limit of $25,000. Allstate refused, offering $1,600 to settle the claim based on its assessment that Keodalah was 70 percent at fault. After Keodalah asked Allstate to explain its evaluation, Allstate increased its offer to $5,000.

Keodalah sued Allstate, asserting a UIM claim. Allstate designated claims adjuster Tracey Smith as its CR 30(b)(6) representative.[1] Although Allstate possessed

---

[1] CR 30(b)(6) provides, in relevant part, that when a party designates a private organization as a deponent, "the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf . . . . The persons so designated shall testify as to the matters known or reasonably available to the organization."

2

both the SPD report and TCA analysis, Smith claimed that Keodalah had run the stop sign and had been on his cell phone. Smith later admitted, however, that Keodalah had not run the stop sign and had not been on his cell phone. Before trial, Allstate offered Keodalah $15,000 to settle the claim. Keodalah again requested the $25,000 policy limit, and the case proceeded to a jury trial.

At trial, Allstate contended that Keodalah was 70 percent at fault. The jury determined the motorcyclist to be 100 percent at fault and awarded Keodalah $108,868.20 for his injuries, lost wages, and medical expenses. The trial court entered judgment against Allstate for $25,302.95.

Keodalah filed a second lawsuit against Allstate and included claims against Smith. These included alleged violations of the Washington Insurance Fair Conduct Act (IFCA), chapter 48.30 RCW; insurance bad faith; and CPA violations. Allstate and Smith moved to dismiss the complaint under CR 12(b)(6) ("failure . . . to state a claim upon which relief can be granted"). The trial court granted the motion in part, dismissing Keodalah's claims against Smith and certifying the partial dismissal for discretionary review under RAP 2.3(b)(4).[2]

The Court of Appeals granted discretionary review of three issues: (1) whether IFCA creates a private cause of action for violation of a regulation, (2) whether an individual insurance adjuster may be liable for bad faith, and (3) whether an individual

---

[2] RAP 2.3(b)(4) provides that an appellate court may accept discretionary review where "[t]he superior court has certified . . . that the [superior court's] order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation."

insurance adjuster may be liable for violation of the CPA. The Court of Appeals held that this court's decision in *Perez-Crisantos v. State Farm Fire & Casualty Co.*, 187 Wn.2d 669, 672, 389 P.3d 476 (2017), which held that the IFCA does not create an independent private cause of action for violation of a regulation, foreclosed Keodalah's IFCA claim.[3]

The Court of Appeals reversed the trial court's CR 12(b)(6) dismissal, holding that the statutory duty of good faith imposed by RCW 48.01.030 applied to individual insurance adjusters and breach of that statutory duty could serve as a basis for Keodalah's bad faith and CPA claims against Smith. Smith filed a petition for review, which this court granted. 191 Wn.2d 1004 (2018).

## ANALYSIS

### Standard of Review

This court applies de novo review to questions concerning statutory interpretation and dismissal under CR 12(b)(6). *State v. Evergreen Freedom Found.*, 192 Wn.2d 782, 789-90, 432 P.3d 805 (2019), *cert. denied*, 139 S. Ct. 2647 (2019); *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998). In construing a statute, the fundamental objective is to ascertain and carry out the legislature's intent. *Evergreen Freedom Found.*, 192 Wn.2d at 789. We look to "the entire 'context of the statute in which the provision is found, [as well as] related provisions, amendments to the provision, and the statutory scheme as a whole.'" *Id.* (alteration in original) (internal

---

[3] Review of the Court of Appeals' IFCA determination has not been sought.

4

quotation marks omitted) (quoting *State v. Conover*, 183 Wn.2d 706, 711, 355 P.3d 1093 (2015); *see also G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 310, 237 P.3d 256 (2010) ("enacted statement of legislative purpose is included in a plain reading of a statute"). As this court opined in *Evergreen Freedom Foundation*,

> "The meaning of words in a statute is not gleaned from [the] words alone but from all the terms and provisions of the act in relation to the subject of the legislation, the nature of the act, the general object to be accomplished and consequences that would result from construing the particular statute in one way or another."

192 Wn.2d at 790 (alteration in original) (internal quotation marks omitted) (quoting *Burns v. City of Seattle*, 161 Wn.2d 129, 146, 164 P.3d 475 (2007)); *see also id.* (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002), for the proposition that "plain meaning" is "discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question").

Under CR 12(b)(6), dismissal of a complaint for "failure . . . to state a claim upon which relief can be granted" involves a question of law, and such dismissal is appropriate "only if it appears beyond doubt that the plaintiff cannot prove any set of facts which would justify recovery." *Tenore*, 136 Wn.2d at 330. In such a case, a "plaintiff's allegations are presumed to be true and a court may consider hypothetical facts not included in the record." *Id.* "CR 12(b)(6) motions should be granted 'sparingly and with care' and 'only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'" *Id.* (quoting *Orwick v. City of Seattle*, 103 Wn.2d 249, 254, 692 P.2d 793 (1984); *Hoffer v. State*, 110

No. 95867-0

Wn.2d 415, 420, 755 P.2d 781 (1988)). As discussed below, in our view, this is such a

case.

The Court of Appeals' decision turned on the statutory duty it found in RCW

48.01.030, which provides:

> The business of insurance is one affected by the public interest, requiring
> that all persons be actuated by good faith, abstain from deception, and
> practice honesty and equity in all insurance matters. Upon the insurer, the
> insured, their providers, and their representatives rests the duty of
> preserving inviolate the integrity of insurance.

Keodalah echoes the Court of Appeals, arguing that by imposing a duty on "all persons"

to act in good faith, the plain language of the statute subjects employee adjusters to bad

faith and CPA claims premised on breach of the noted statutory duty.

Smith argues that not every duty imposed by a statute is an actionable tort, that

RCW 48.01.030 does not expressly create a private right of action, and that the Court of

Appeals did not employ the three-pronged test articulated in *Bennett v. Hardy*, 113

Wn.2d 912, 784 P.2d 1258 (1990), for determining whether a statute includes an implied

cause of action, to wit: (1) whether the plaintiff is within the class for whose benefit the

statute was enacted, (2) whether legislative intent, explicitly or implicitly, supports

creating or denying a remedy, and (3) whether implying a remedy is consistent with the

underlying purpose of the legislation. *See Swank v. Valley Christian Sch.*, 188 Wn.2d

663, 675-76, 398 P.3d 1108 (2017) (discussing the *Bennett* test). We agree with Smith.[4]

---

[4] In her briefing to this court, Smith adopts amici's argument applying the *Bennett* test in the
present case. While we do not generally consider arguments raised for the first time on review
by amici, we have discretion to do so where necessary to appropriately resolve a case. *See Falk
v. Keene Corp.*, 113 Wn.2d 645, 659, 782 P.2d 974 (1989) ("[a]n appellate court has inherent

6

*Bennett* factors

The first *Bennett* factor (benefited class) is not met if the statute in question benefits the general public rather than an identifiable class of persons. As this court stated in *Fisk v. City of Kirkland*, 164 Wn.2d 891, 895, 194 P.3d 984 (2008), "Plaintiffs, basing their claims on a statute, must establish that they fall within the class of persons intended to be protected by that statute." And "if the statute serves the general public welfare instead of an identifiable class of persons, then there is no duty to any individual unless a specific exception applies." *Id.*; *see also Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 210, 304 P.3d 914 (2013) (because the legislature enacted the statute at issue "to protect the general public from risks posed by legend drugs," complainant cannot qualify as a member of a "class for whose especial benefit" the legislation was enacted); *see also Cannon v. Univ. of Chi.*, 441 U.S. 677, 690 n.13, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979) (noting that "the Court has been especially reluctant to imply causes of actions under statutes that create duties on the part of persons for the benefit of the public at large").

Here, the interest addressed in RCW 48.01.030 is expressly stated to be the "public interest," and the statute indicates that its purpose is to protect the "integrity of insurance." Accordingly, it cannot be said that the statute was enacted for the particular benefit of insureds; thus, the first *Bennett* factor does not support finding an implied cause of action for a violation of RCW 48.01.030.

---

authority to consider issues which the parties have not raised if doing so is necessary to a proper decision"). We agree that the *Bennett* test should be applied here for an appropriate resolution.

7

The second *Bennett* factor, regarding legislative intent to create a remedy, also concerns statutory interpretation. If the statute, read in the context of all the legislature has said on the subject, is plain on its face, we will give it that plain meaning. *See Campbell & Gwinn*, 146 Wn.2d at 11-12. But if after reading the statute in context, it remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history. *Id.* at 12. Here, RCW 48.01.030 expressly recognizes a "duty," but it fails to provide an express cause of action based on violations of that duty. Given this seeming ambiguity, we further consider the relevant statutory and historical context.

As to the statutory context, we find it significant that the insurance code contains several specific enforcement mechanisms. The insurance commissioner has broad authority to make rules and conduct investigations to give effect to the insurance code. RCW 48.02.060(3). The commissioner also has authority to suspend or revoke the licenses of insurers and adjusters, and may subject them to fines. RCW 48.05.130, .140, .185 (insurers); RCW 48.17.530, .560 (adjusters). Criminal liability may attach where service providers make payments to get claimant referrals. RCW 48.30A.015. The insurance code provides generally that "[e]xcept as otherwise provided in this code, any person violating any provision of this code is guilty of a gross misdemeanor." RCW 48.01.080. In our view, the presence of such specific provisions for enforcement of the insurance code suggests that the legislature's omission of a provision creating a private cause of action for violations of RCW 48.01.030's duty of good faith was intentional. *See Davenport v. Wash. Educ. Ass'n*, 147 Wn. App. 704, 718-19, 197 P.3d 686 (2008)

(noting the ease with which the drafters could have expressed a private statutory cause of action, "we think that the omission implies the *absence* . . . of intent to create a private statutory cause of action"); *see also Perez-Crisantos*, 187 Wn.2d at 680 (where a statute specifically designates the things on which it operates, there is an inference that the legislature intended all omissions). Accordingly, the overall statutory context suggests that the legislature did not intend to imply a cause of action based on violations of RCW 48.01.030.

The historical context of this statute also bolsters this conclusion. An actionable common law duty of good faith had already been established when RCW 48.01.030 was enacted in 1947. *See Burnham v. Commercial Cas. Ins. Co. of Newark*, 10 Wn.2d 624, 628-35, 117 P.2d 644 (1941). Nothing in the insurance code indicates that RCW 48.01.030 was intended to alter the previously established common law duty.[5] Accordingly, RCW 48.01.030 may properly be read as a broad statement of public policy supporting specific provisions of the insurance code, not as an additional and separate statutory cause of action.

The third *Bennett* factor concerns whether recognizing a cause of action would be consistent with the legislature's purpose in enacting RCW 48.01.030. The legislative intent, as discussed above, indicates that the legislature's purpose was to support the insurance code's specific enforcement mechanisms and the existing common law cause

---

[5] Since its 1947 enactment, RCW 48.01.030 has been amended only once. In 1995, the legislature added "their providers" to the list of responsible entities in the statute's second sentence. *See* LAWS OF 1995, ch. 285, § 16.

of action for insurance bad faith as a matter of policy. We acknowledge that in the abstract, recognition of an implied cause of action under RCW 48.01.030 could arguably further the general policy goal of "preserving inviolate the integrity of insurance," RCW 48.01.030, but such a broad application would add a layer of liability that runs counter to the legislative purposes noted above. If we were to read the statute to imply a cause of action, by the statute's plain language, such implied cause of action would apply against insureds as well. That is, insurers would be empowered to sue their insured, and the providers and representatives of both insurer and insured would face potential liability for alleged bad faith "in all insurance matters." In our view, the provision of such a broad inferred cause of action subjecting every person and entity listed in RCW 48.01.030 to liability would not be consistent with the legislature's purpose in enacting the statue as discussed above.

In sum, application of the *Bennett* factors does not support the imposition of an implied cause of action here. In light of RCW 48.01.030's plain language, indicating that the statute is intended to benefit the general public, and the broader statutory and historical context in which the statute appears, we hold that RCW 48.01.030 does not create an implied cause of action for insurance bad faith.

Keodalah's CPA claims

Keodalah alleged that adjuster Smith committed "*per se* CPA violations" by committing specific unfair claims settlement practices, as defined in the Washington Administrative Code (WAC), and by engaging in "bad-faith conduct." Clerk's Papers (CP) at 14. To establish a CPA claim, a plaintiff must prove five elements: (1) an unfair

or deceptive act or practice that (2) affects trade or commerce and (3) impacts the public interest, and (4) the plaintiff sustained damage to business or property that was (5) caused by the unfair or deceptive act or practice. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785-793, 719 P.2d 531 (1986); *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 834-35, 355 P.3d 1100 (2015). All five elements must be established for a CPA claim to be successful. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 38, 204 P.3d 885 (2009). Certain elements of a CPA claim are deemed satisfied "per se" based on violation of another statute. The first two elements of a CPA claim are established where a statute declares that a violation is a per se unfair trade practice. *Hangman Ridge*, 105 Wn.2d at 786. The third element also may be established per se based on a showing that a statute has been violated that contains a specific legislative declaration of public interest impact. *Id.* at 791.

As for the WAC violations, Keodalah's complaint described alleged violations found in WAC 284-30-330(2), (4), (6), (7), (8), and (13). *See* CP at 12-13. All of those subsections are preceded by this language: "The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices *of the insurer* in the business of insurance, specifically applicable to the settlement of claims . . . ." WAC 284-30-330 (emphasis added). While a violation of WAC 284-30-330 is a per se unfair trade practice, *see Indus. Indem. Co. of Nw., Inc. v. Kallevig*, 114 Wn.2d 907, 922-23, 792 P.2d 520 (1990), Smith did not owe Keodalah a duty under that regulation because that regulation defines only unfair acts or practices of *the insurer*. Because Smith is not *the insurer*, Keodalah cannot seek to enforce the regulation against Smith. *Merriman v.*

11

*Am. Guar. & Liab. Ins. Co.*, 198 Wn. App. 594, 627-28, 396 P.3d 351, *review denied*, 189 Wn.2d 1038 (2017). We hold that Keodalah's CPA claims against Smith premised on regulatory violations were properly dismissed.

Keodalah also repeats his reliance on RCW 48.01.030 as to his asserted CPA claims. He contends that a breach of the good faith duty that RCW 48.01.030 imposes on employee adjusters subjects them to CPA liability. But as discussed above, RCW 48.01.030 does not itself provide an actionable duty.

While RCW 48.01.030 does establish per se public interest, *see Hangman Ridge*, 105 Wn.2d at 791-92, nevertheless, Keodalah's CPA claim based on RCW 48.01.030 fails, for a similar reason as his tort claim: just as this court has limited bad-faith tort claims to the context of the insurer-insured relationship,[6] so has it limited CPA claims based on breach of the statutory duty of good faith. *See Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 394-95, 715 P.2d 1133 (1986) (holding that only an insured may bring a per se CPA action based on breach of the duty of good faith).

---

[6] As this court explained in *Tank*,

> The duty to act in good faith or liability for acting in bad faith generally refers to the same obligation. . . . [The] source [of that duty] is the fiduciary relationship existing between the insurer and insured. Such a relationship exists not only as a result of the contract between insurer and insured, but because of the high stakes involved for both parties to an insurance contract and the elevated level of trust underlying insureds' dependence on their insurers.

*Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385, 715 P.2d 1133 (1986); *see also Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 793 n.2, 16 P.3d 574 (2001) (same); *Murray v. Mossman*, 56 Wn.2d 909, 912, 355 P.2d 985 (1960) (the duty of the insurance company to use good faith in the handling of a claim against the insured springs from a fiduciary relationship that is entirely lacking between the person injured and the insurance company); *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 130 n.3, 196 P.3d 664 (2008) (clarifying that the insurer has a quasi-fiduciary relationship with the insured).

In *Tank*, this court acknowledged the common law duty of good faith imposed on the insurance industry. *Id.* at 386 ("The duty of good faith has been imposed on the insurance industry in this state by a long line of judicial decisions."). The *Tank* court also acknowledged the duty imposed by RCW 48.01.030, stating, "Not only have the courts imposed on insurers a duty of good faith, the Legislature has imposed it as well." *Id.* (citing RCW 48.01.030). In this context, addressing alleged per se CPA violations against the insurer by third party claimants, this court opined:

> It is established that insureds may bring a private action against their *insurers* for breach of duty of good faith under the CPA. It is also established that breach of an *insurer's* duty of good faith constitutes a per se CPA violation. However, *only an insured* may bring a *per se* [CPA] action.

*Id.* at 394 (some emphasis added) (citations omitted).

Further, while this court has held that the CPA may apply although the plaintiff and defendant had no contract and were in an "adversarial relationship," *Panag*, 166 Wn.2d at 41-42, nevertheless, this court in *Panag* did not overrule *Tank* and its treatment of the statutory duty of good faith. Rather, it reiterated that "[o]nly an insured may bring a CPA claim for an insurer's breach of its statutory duty of good faith." *Id.* at 43 n.6 (citing *Tank*). Although Keodalah, as the insured here, can sue Allstate, he cannot also sue Smith.[7] Because Keodalah claims a breach of the duty of good faith by someone

---

[7] "RCW 48.01.030 holds persons in the insurance industry to a good faith standard and has been frequently applied when *an insurer* denies claim coverage or acts unreasonably when processing a claim." *Barstad v. Stewart Title Guar. Co.*, 145 Wn.2d 528, 543, 39 P.3d 984 (2002) (emphasis added). "'[A]n insurance company is bound by all acts, contracts, or representations of its agent, whether general or special, which are within the scope of his real or apparent authority.'" *Chi. Title Ins. Co. v. Office of Ins. Comm'r*, 178 Wn.2d 120, 135-36, 309 P.3d 372

outside the quasi-fiduciary relationship, his CPA claim based on RCW 48.01.030 was properly dismissed.

CONCLUSION

For the reasons discussed above, we hold that employee adjusters are not subject to personal liability for insurance bad faith or per se claims under the CPA. We reverse the Court of Appeals and reinstate the trial court's CR 12(b)(6) dismissal of claims against the employee adjuster and remand for further proceedings.

---

(2013) (internal quotation marks omitted) (quoting *Pagni v. N.Y. Life Ins. Co.*, 173 Wash. 322, 349-50, 23 P.2d 6 (1933)); *see also Annechino v. Worthy*, 175 Wn.2d 630, 638, 290 P.3d 126 (2012) (agents are not personally liable for quasi-fiduciary duties that may arise when dealing on behalf of a disclosed principal where the agent does not independently owe a duty to the third party and does not knowingly make misrepresentations); *Pain Diagnostics & Rehab. Assocs. v. Brockman*, 97 Wn. App. 691, 697, 988 P.2d 972 (1999) ("In creating the insurance regulatory scheme, the Legislature and the insurance commissioner did not intend to provide protection or remedies for individual interests; they intended only to create a mechanism for regulating the insurance industry."); *Cogan v. Kidder, Mathews & Segner, Inc.*, 97 Wn.2d 658, 663, 648 P.2d 875 (1982) (acknowledging the "unmitigated loyalty in the principal-agent relationship" and "an agent's absolute duty to his principal"); *Carabba v. Anacortes Sch. Dist. No. 103*, 72 Wn.2d 939, 956-58, 435 P.2d 936 (1967) (a principal who is under a duty to provide protection for others or their property and who confides the performance of such duty to a servant is subject to liability for harm caused to such others by the failure of the agent to perform the duty); *Greene v. St. Paul-Mercury Indem. Co.*, 51 Wn.2d 569, 573, 320 P.2d 311 (1958) (test for determining if employee is acting in the course of his employment is whether the employee at the time was engaged in the performance of duties required of him by his contract of employment or by specific direction of his employer, or if he was engaged at the time in the furtherance of the employer's interest).

14

No. 95867-0

_Madsen, J._

WE CONCUR:

_Wiggins, J._

_Gordon McCloud, J._

No. 95867-0

YU, J. (dissenting) — I agree with the majority that RCW 48.01.030 does

not imply a statutory cause of action for insurance bad faith. However, I would

affirm the Court of Appeals' reinstatement of respondent Moun Keodalah's claim

against petitioner Tracey Smith for per se violations of the Consumer Protection

Act (CPA), ch. 19.86 RCW. I would also hold that Keodalah's complaint states a

viable cause of action for common law insurance bad faith against Smith, an issue

the majority fails to address. I therefore respectfully dissent.

## ANALYSIS

A.    A claims adjuster may be liable for per se CPA violations

The majority holds that Keodalah may not assert a per se CPA claim against

Smith because "RCW 48.01.030 does not itself provide an actionable duty."

Majority at 12. I disagree. Violations of a statute that does not create a stand-

alone cause of action may still form the basis for a valid CPA claim. *E.g., Frias v.*

*Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 417, 334 P.3d 529 (2014)

(applying the deeds of trust act, ch. 61.24 RCW). I would hold that Keodalah's per se CPA claim against Smith states a viable cause of action, regardless of whether Smith can be subject to a statutory or common law tort claim for insurance bad faith.[1]

Unlike Keodalah's bad faith claim against Smith, which I address below, his CPA claim does not require us to search for legislative intent to infer a statutory cause of action, nor must we weigh the implications of recognizing an actionable common law duty. The legislature's intent is clear because the CPA itself explicitly creates a cause of action, RCW 19.86.090, and the elements of a CPA claim are already well established: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The only question is whether Smith is a proper defendant. I would hold that she is because none of the elements of a CPA claim ask whether there is a contractual, fiduciary, or quasi-fiduciary relationship between the plaintiff and the defendant.

---

[1] The majority is correct that Smith cannot be liable for per se CPA claims based on violations of regulations that explicitly apply only to an "insurer." Majority at 11-12. However, there is no reason she cannot be liable for per se CPA claims based on violations of statutes in Title 48 RCW that apply generally to "persons." *E.g.*, RCW 48.01.030; RCW 48.30.040. Smith is a "person." RCW 48.01.070.

Indeed, we have explicitly rejected the argument that "the CPA applies only to disputes arising from a consumer or business transaction and that only a consumer or someone in a business relationship can bring a private cause of action under the CPA." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 38, 204 P.3d 885 (2009). Unlike tort claims for insurance bad faith, the CPA "is not intended to satisfy 'reasonable expectations' of 'quasi-fiduciary treatment.'" *Id.* at 40. Instead, the purpose of the CPA "is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition," and the CPA must be "liberally construed" to promote this purpose. RCW 19.86.920. Thus, "[t]he law is clear that corporate officers and agents can incur personal liability under the [CPA]." *Gould v. Mut. Life Ins. Co. of N.Y.*, 37 Wn. App. 756, 759, 683 P.2d 207 (1984) (citing RCW 19.86.140; *State v. Ralph Williams' N. W. Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 553 P.2d 423 (1976)).

The majority holds otherwise by improperly analogizing Keodalah's CPA claim against Smith to a CPA claim brought by a third party against an insurer. Majority at 12-14. We have previously held that third parties "lack[ ] standing to allege a per se CPA violation based upon violation of the insurance code. Only an insured may bring a CPA claim for an insurer's breach of its statutory duty of good faith." *Panag*, 166 Wn.2d at 43 n.6 (citing *Tank v. State Farm Fire & Cas. Co.*,

3

105 Wn.2d 381, 385, 715 P.2d 1133 (1986)). However, that is irrelevant because Keodalah is the insured; he unquestionably has standing.

The majority's reliance on *Panag* and *Tank* thus conflates a plaintiff's standing to sue with a defendant's capacity to be sued. Nothing in this court's precedent or the CPA itself indicates that claims adjusters are categorically not subject to claims for per se CPA violations predicated on their own violations of applicable statutes.[2] I would therefore affirm the Court of Appeals on this issue and hold that Keodalah has stated a valid cause of action against Smith for per se violations of the CPA.

B.    The court should address Keodalah's common law claim

Turning now to Keodalah's insurance bad faith claims against Smith, I agree with the majority that the legislature did not intend for RCW 48.01.030 to imply a statutory cause of action. Majority at 6-10 (applying *Bennett v. Hardy*, 113 Wn.2d 912, 784 P.2d 1258 (1990)). However, the tort of insurance bad faith "derives from statutory and regulatory provisions, *and the common law*." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 128, 196 P.3d 664 (2008)

---

[2] One published Court of Appeals case holds otherwise, but it does so on the basis that "[t]o be liable under the CPA, there must be a contractual relationship between the parties." *Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.*, 122 Wn. App. 736, 758, 87 P.3d 774 (2004). That basis is no longer valid. As the Court of Appeals in this case correctly recognized, "[w]e cannot reconcile *International Ultimate* with *Panag*. And we must follow the Supreme Court's more recent controlling decision." *Keodalah v. Allstate Ins. Co.*, 3 Wn. App. 2d 31, 42, 413 P.3d 1059 (2018).

4

(emphasis added). In addition to his statutory claim, Keodalah raises a common law bad faith claim against Smith, which the trial court dismissed and which the Court of Appeals did not reach. This court should either decide whether Keodalah's complaint states a viable common law claim against Smith or remand for the Court of Appeals to do so. I would decide the issue here.

Keodalah's complaint raises both statutory and common law claims for insurance bad faith against Smith, claiming that her "actions and omissions alleged herein are in violation of RCW 48.01.030 *and* [her] duty to act in good faith." Clerk's Papers (CP) at 13 (emphasis added). Keodalah never abandoned his common law claim, and Smith herself acknowledged in her briefing to the Court of Appeals that Keodalah was asserting a claim "for common law insurance bad faith." Resp. in Opp'n to Mot. for Discr. Review at 3 (Wash. Ct. App. No. 75731-8-I (2016)). The Court of Appeals granted discretionary review on the question of "whether an individual insurance adjuster may be liable for bad faith" without limiting its review to the statutory claim. *Keodalah v. Allstate Ins. Co.*, 3 Wn. App. 2d 31, 34, 413 P.3d 1059 (2018). In this court, Keodalah and amicus Washington State Association for Justice Foundation both briefed Keodalah's common law claim, and at oral argument, Keodalah repeatedly stated that he was pursuing a common law bad faith claim against Smith. Wash. Supreme Court oral argument, *Keodalah v. Allstate Ins. Co.*, No. 95867-0 (Feb. 26, 2019), at 19 min.,

42 sec. through 23 min., 32 sec., *video recording by* TVW, Washington State's

Public Affairs Network, http://www.tvw.org. Thus, Keodalah's common law

claim is pleaded in his complaint, is within the scope of issues on which the Court

of Appeals granted review, and has been fully briefed.

The fact that Keodalah cannot raise a statutory claim against Smith does not

resolve the question of whether he can raise a common law claim. Whether an

implied statutory cause of action exists is a question of statutory interpretation.

*Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 676, 389 P.3d 476

(2017). We therefore consider factors that clarify what the legislature intended.

*See Bennett*, 113 Wn.2d at 920-21. Meanwhile, our recognition of common law

causes of action depends on this court's consideration of "logic, common sense,

justice, policy, and precedent, as applied to the facts of the case." *Centurion

Props. III, LLC v. Chi. Title Ins. Co.*, 186 Wn.2d 58, 65, 375 P.3d 651 (2016).

Where both common law and statutory claims are raised, as they are here, each

should be addressed independently.

The Court of Appeals ultimately did not reach the common law claim

because it reversed the trial court's CR 12(b)(6) dismissal based on Keodalah's

statutory claim. *Keodalah*, 3 Wn. App. 2d at 36. However, because we now

reverse on the statutory claim, we must consider Keodalah's common law claim,

an issue that was "raised" in the Court of Appeals and "might support" its decision

to reverse the trial court. RAP 13.7(b). We are required to "either consider and decide" that issue here "or remand the case to the Court of Appeals" to do so. *Id.* The majority does neither, instead "revers[ing] the Court of Appeals and reinstat[ing] the trial court's CR 12(b)(6) dismissal" without acknowledging Keodalah's common law claim. Majority at 14.

I would address the viability of Keodalah's common law claim against Smith in this court because it is a matter of first impression that has been fully briefed and can be decided as a matter of law. At a minimum, however, the court should acknowledge that Keodalah raises a common law bad faith claim against Smith and remand to the Court of Appeals to consider whether that claim is viable.

C.     The court should recognize an actionable common law duty of good faith owed by claims adjusters to the insured

Insurance bad faith claims "are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485, 78 P.3d 1274 (2003). At this stage of the proceedings, the parties dispute only the duty element: whether a claims adjuster employed by the insurer (Smith) owes an actionable duty of good faith to the insured (Keodalah).

"Whether an individual has a duty in the first instance is a question of law." *Kim v. Lakeside Adult Family Home*, 185 Wn.2d 532, 548, 374 P.3d 121 (2016).

7

"Duty may be predicated on violation of a statute or common law principles." *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 932, 653 P.2d 280 (1982). When considering common law duties, this court looks to "logic, common sense, justice, policy, and precedent, as applied to the facts of the case." *Centurion Props.*, 186 Wn.2d at 65.

While some precedent from other jurisdictions limits the common law duty of insurance good faith to the insurer itself, other precedent suggests that claims adjusters do owe the insured a common law duty of good faith as a matter of Washington law. Furthermore, logic, common sense, justice, and policy, as applied to the facts of this case, strongly support recognizing an actionable common law duty of good faith owed by claims adjusters to the insured. I would therefore recognize such a duty.

1.    Relevant precedent is mixed

Although this court has never before considered whether a claims adjuster owes a common law duty of good faith to the insured, courts in other jurisdictions have done so. While a majority of other courts do not recognize such a duty, some of them do, and Washington precedent indicates that we should not follow the majority on this issue.

"[T]he majority of courts from other jurisdictions that have addressed this issue have found that such an adjustor or investigator owes a duty only to the

8

insurance company that hired it" and owes no common law duty to the insured.

*Akpan v. Farmers Ins. Exch., Inc.*, 961 So. 2d 865, 873 (Ala. Civ. App. 2007).

These courts have generally taken the view that an insurer's duty of good faith is

derived from its "unique relationship with the insured through the insurance

contract." *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 645 (7th Cir.

2015). Therefore, the "duty of good faith arising under the contract does not

extend to a person who is not a party to the insurance contract." *Charleston Dry*

*Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 355 S.C. 614, 618, 586 S.E.2d

586 (2003).

However, the majority position is not unanimous. Several states explicitly

recognize some type of common law cause of action for bad faith against claims

adjusters. For instance, Mississippi recognizes a common law duty for adjusters to

refrain from "'gross negligence, malice, or reckless disregard for the rights of the

insured.'" *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 98-CA-00192-SCT, 887

So. 2d 777, ¶ 25 (Miss. 2004) (quoting *Bass v. Cal. Life Ins. Co.*, 581 So. 2d 1087,

1090 (Miss. 1991)). New Hampshire imposes a common law duty of good faith on

insurers' agents, and Alaska holds that insurers' agents may be "liable for

negligence arising out of a breach of the general tort duty of ordinary care."

*Morvay v. Hanover Ins. Cos.*, 127 N.H. 723, 725-26, 506 A.2d 333 (1986); *Cont'l*

*Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 287 (Alaska 1980). Meanwhile,

Montana recognizes "a common law cause of action exists to redress violations of" Montana's Unfair Trade Practices and Consumer Protection Act. *O'Fallon v. Farmers Ins. Exch.*, 260 Mont. 233, 243, 859 P.2d 1008 (1993); MONT. CODE ANN. ch. 30-14. In addition, several states recognize a common law duty in limited circumstances where the adjuster (or other agent of the insurance company) assumes primary control over handling a claim, thus stepping into the shoes of the insurer. *Robertson Stephens, Inc. v. Chubb Corp.*, 473 F. Supp. 2d 265, 274-75 (D.R.I. 2007) (applying Rhode Island law); *Riccatone v. Colo. Choice Health Plans*, 2013 COA 133, ¶¶ 17-18, 315 P.3d 203, 207; *Trinity Baptist Church v. Bhd. Mut. Ins. Servs., LLC*, 2014 OK 106, ¶ 16, 341 P.3d 75, 81.

Cases applying Washington law indicate that our common law more closely aligns with these minority positions. Unlike in some other states, the common law duty of insurance good faith in Washington is *not* derived solely from the contractual relationship between the insurer and the insured. *See Lodholtz*, 778 F.3d at 645. When we first recognized the common law duty, we did not attach it to any contractual relationship, instead simply stating that "[o]f course, bad faith of appellant insurer in [investigating and settling a claim] would render the insurer liable." *Burnham v. Commercial Cas. Ins. Co. of Newark*, 10 Wn.2d 624, 631, 117 P.2d 644 (1941). We later elaborated that the duty of insurance good faith "exists *not only* as a result of the contract between insurer and insured, but because of the

10

high stakes involved for both parties to an insurance contract and the elevated level of trust underlying insureds' dependence on their insurers." *Tank*, 105 Wn.2d at 385 (emphasis added). As discussed further below, high stakes and an elevated level of trust are clearly implicated by the work of a claims adjuster because the claims adjuster's work directly influences the decisions of the insurer. Therefore, unlike in some other states, it cannot be said that "[a]bsent an insurance contract, the policy rationales for imposing a duty on a claims adjuster cease to exist" in Washington. *Lodholtz*, 778 F.3d at 645.

In sum, relevant precedent is mixed. While the majority of cases applying the law of other jurisdictions limit the common law duty of insurance good faith to the insurer, some Washington precedent indicates that we should adopt the minority position and recognize a common law duty of insurance good faith owed by the insurer's claims adjusters.

    2.    Considerations of policy, common sense, logic, and justice support recognizing a common law duty

In addition to precedent, we must also consider policy, common sense, logic, and justice, "as applied to the facts of the case." *Centurion Props.*, 186 Wn.2d at 65. Legislative enactments provide a clear source of public policy that this court may consider when deciding whether to recognize a common law duty. *See*

11

*Bernethy*, 97 Wn.2d at 932-33. The most relevant statute in this case is RCW

48.01.030, which provides,

> The business of insurance is one affected by the public interest,
> requiring that all persons be actuated by good faith, abstain from
> deception, and practice honesty and equity in all insurance matters.
> Upon the insurer, the insured, their providers, and their representatives
> rests the duty of preserving inviolate the integrity of insurance.

This language sets forth a strong public policy favoring good faith by all those

participating in insurance matters. As such, this court has regularly looked to "the

principles enunciated by the legislature in chapter 48.01 RCW: that the insurance

business requires good faith, honesty, and equity in all insurance matters." *Onvia*,

165 Wn.2d at 131.

As the majority acknowledges, majority at 9-10, these principles would be

promoted through "the deterrent effect of tort law" by recognizing an actionable

duty of good faith owed by claims adjusters to the insured. *Davis v. Baugh Indus.*

*Contractors, Inc.*, 159 Wn.2d 413, 419, 150 P.3d 545 (2007). The majority also

correctly notes that there are good reasons not to recognize an actionable duty of

good faith on the part of every entity named in RCW 48.01.030, such as "the

insured" and all "providers" and "representatives." *See* majority at 10. However,

those reasons do not apply to an insurer's claims adjuster.

While the ultimate coverage decision is made by the insurer itself, that

decision is directly informed by the work of the claims adjuster. An adjuster's bad

faith investigation or evaluation of a claim may lead directly to an insurer's wrongful denial of coverage or refusal to settle a claim for what it is actually worth. Claims adjusters should thus be "fully aware that the [insured] could be harmed financially if they performed their investigation in a negligent manner and rendered a report to [the insurer] that would cause the company to refuse payment." *Morvay*, 127 N.H. at 726.

Common sense and justice "support[ ] placing liability on the party best able to mitigate or control the anticipated harm." *Centurion Props*, 186 Wn.2d at 83. The pivotal role of claims adjusters places them in a unique position either to prevent harm to the insured by acting in good faith or to cause harm to the insured by acting in bad faith. Indeed, the facts pleaded in the complaint suggest that Smith's bad faith caused Keodalah harm in this case, with Smith asserting that Keodalah was primarily at fault for the accident because he supposedly ran a stop sign and was on his cell phone, even though there was no evidence to support these allegations and Smith ultimately admitted they were not true. CP at 8.

At this early stage of the proceedings, we cannot know the full extent of Smith's involvement with Keodalah's claim, but we must take the complaint as true and "consider hypothetical facts supporting the plaintiff's claim." *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014). The allegations in Keodalah's complaint are entirely

consistent with his claim that Smith acted in bad faith when adjusting his claim. No party or amicus contends otherwise, and potential liability on the part of her employer was clearly not sufficient to deter Smith's alleged bad faith conduct. Therefore, in accordance with "logic, common sense, justice, policy, and precedent, as applied to the facts of the case," *Centurion Props.*, 186 Wn.2d at 65, I would recognize a common law duty of good faith to the insured by the insurer's claims adjuster and hold that Keodalah states a viable claim for common law insurance bad faith against Smith.

In recognizing this common law duty, I would also recognize its limitations. Most importantly, adjusters are liable only for knowing bad faith conduct that is within their control. *See Annechino v. Worthy*, 175 Wn.2d 630, 638, 290 P.3d 126 (2012) (quoting RESTATEMENT (THIRD) OF AGENCY §§ 7.01-.02 (AM. LAW INST. 2006) and citing *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 400, 241 P.3d 1256 (2010)). Thus, where claims adjusters perform their own duties in good faith, they cannot be liable for an insurer's ultimate decision to act in bad faith. Likewise, where the insurer's policies or practices make it impossible for claims adjusters to act in good faith while also fulfilling their employment responsibilities, it is the insurer who is liable. Adjusters are not liable for the insurer's policies, nor are they required to "place the insured's interests above

[their] own." *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992).

In this case, taking the facts alleged in Keodalah's complaint as true and assuming hypothetical facts showing that Smith knowingly acted in bad faith when adjusting his claim, I would hold that Keodalah does state a viable claim for common law insurance bad faith against Smith. I would therefore affirm the Court of Appeals on different grounds and remand Keodalah's common law claim to the trial court for further proceedings.

## CONCLUSION

I would hold that Keodalah's complaint does state viable causes of action against Smith for per se CPA violations and common law insurance bad faith, and remand those claims to the trial court for further proceedings. I therefore respectfully dissent.

Yu, J.

González, J.

Fairhurst, C.J.

Stephens, J.