# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ALIONA KOSOVAN, | No. 54904-2-II |
| Appellant, | |
| v. | |
| OMNI INSURANCE COMPANY, a foreign insurance carrier, PRAXIS CONSULTING, INC., a foreign corporation, | PUBLISHED OPINION |
| Respondents. | |

CRUSER, J. — Aliona Kosovan appeals the trial court's orders granting summary judgment in favor of Omni Insurance Company (Omni) and Praxis Consulting, Inc. (Praxis), dismissing her Consumer Protection Act (CPA)[1] claims against both entities. Kosovan was injured in a motor vehicle accident by an at-fault third party and obtained Personal Injury Protection (PIP) benefits under her insurance policy with Omni. Kosovan then sought to recover for personal injury damages she sustained in a suit against the tortfeasor. Before Kosovan settled with the tortfeasor and received full compensation for her injuries, Omni transferred its interest in collecting its

---

[1] Chapter 19.86 RCW.

subrogation[2] claim for PIP benefits to Praxis, and Praxis submitted a subrogation claim letter to the tortfeasor's insurer. Kosovan filed suit alleging that Omni and Praxis' conduct amounted to a violation of the CPA.

On appeal, Kosovan argues that the trial court erred in granting summary judgment in favor of Omni and Praxis because, at minimum, a genuine dispute of material fact remains as to each element of her CPA claim and Omni and Praxis were not entitled to judgment in their favor as a matter of law.

We hold that Kosovan raised a genuine issue of material fact as to each element of her CPA claim against Omni based on her allegation that Omni breached its duty as her insurer to exercise good faith under RCW 48.01.030 when it attempted to assert a right to recover PIP benefits before Kosovan was fully compensated for her injuries. However, we hold that Kosovan's claim against Praxis was properly dismissed as a matter of law.

Accordingly, we reverse the trial court's order granting summary judgment in favor of Omni, affirm the trial court's order granting summary judgment in favor of Praxis, and remand for further proceedings consistent with this opinion.

FACTS

I. THE COLLISION

On December 6, 2015, Kosovan was driving in Oregon when she was hit from behind by a car driven by Joseph Roland. Kosovan suffered a dislocated jaw and hip, and she sustained a

---

[2] Subrogation refers to "the right that one party has against a third party following the payment, in whole or in part, of a legal obligation that ought to have been met by such third party.'" *Daniels v. State Farm Mut. Auto. Ins. Co.*, 193 Wn.2d 563, 569, 444 P.3d 582 (2019) (quoting 2 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 10:5, at 10-23 (6th ed. 2013)).

concussion. Kosovan also experienced severe pain in her back for which she sought care from a chiropractor. In addition to the regular chiropractic treatment that Kosovan received over the 18 months that followed, Kosovan received continued care for her jaw injury and had regular appointments with a neurologist. Kosovan incurred approximately $38,500 in medical expenses related to the collision.

Kosovan was insured by Omni when the collision occurred. In January 2016, counsel for Kosovan informed Omni that Kosovan had made a claim and "may institute a cause of action" against Roland. Clerk's Papers (CP) at 584. Roland was insured by United Services Automobile Association (USAA). Roland's policy limit for personal injuries was $25,000 for any single person injured in a collision, which is the mandatory minimum bodily injury coverage allowed under RCW 46.29.090. USAA accepted full liability for the collision on behalf of Roland.

II. SUBROGATION FOR PIP BENEFITS PAID TO KOSOVAN

Kosovan applied for PIP benefits from Omni, and her application reflected medical expenses totaling $38,566.23. Omni paid Kosovan $10,000 in PIP benefits, which was the maximum allowed under her policy. Kosovan's policy with Omni set forth procedures for seeking subrogation and reimbursement of benefits paid to its insured. Omni's insurance policy provided in relevant part:

OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:
1. Whatever is necessary to enable us to exercise our rights; and
2. Nothing after loss to prejudice them.

. . . .

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
1. Hold in trust for us the proceeds of the recovery; and
2. Reimburse us to the extent of our payment. However, any reimbursement due to us shall be reduced by our pro rata share of any reasonable and necessary costs and expenses, including deposition costs, witness fees and attorney's fees, incurred in bringing the claim.

. . . .

E. We shall be entitled to a recovery under Paragraph (A.) or (B.) only after the person has been fully compensated for damages.

*Id.* at 52-53.

One week after Omni paid Kosovan her PIP benefit, Omni assigned its subrogation claim related to recovery of the PIP benefits it paid to Kosovan to Praxis. Praxis is a firm that conducts subrogation recovery on behalf of insurance companies to obtain reimbursement for the insurer's payment from a third party that is ultimately responsible for that payment. Praxis is not licensed to operate as a collection agency in Washington.

Under its agreement with Praxis, Omni submits a weekly list to Praxis of the PIP payments it issued "to determine whether subrogation potential exists." *Id.* at 407. Omni provides Praxis with "the date of loss, basic facts of the accident, amount of PIP paid and identity of the PIP insured." *Id.* at 298. Praxis would then "identify, investigate, pursue and collect recovery against [third] parties." *Id.* at 407. With regard to the PIP benefits paid to Kosovan, Praxis did not independently investigate the extent of Kosovan's alleged damages or whether Roland's personal liability coverage would pay for all of Kosovan's damages. Instead, Praxis relied on "direction and information received from Omni." *Id.* at 299.

After receiving the assignment from Omni, Praxis contacted USAA and confirmed that USAA had accepted full liability for the collision. Praxis then sent USAA a letter on October 19, 2017, regarding Omni's subrogation claim. The letter read:

> Our investigation of the accident referenced below indicates that liability rests with your insured. Your files should now reflect that we are handling this file. On behalf of our client we now turn to you for reimbursement under the provisions of the Personal Injury Protection Law for benefits and expenses incurred by them to date in the amount of $10,000.00.
>
> . . . .
>
> Please make your check payable to Praxis Consulting, Inc. A/S/0 OIC and forward to the address above.

*Id.* at 134.

Kosovan's counsel received a copy of the letter Praxis sent to USAA. A staff member at the firm Kosovan retained contacted Praxis with regard to the letter Praxis sent to USAA, asking for further information about the medical services that were paid by the PIP benefit. The staff member further notified Praxis that the statute of limitations related to Kosovan's claim would expire in the following month. Because the collision occurred in Oregon, the applicable statute of limitations was two years following the date of collision. OR. REV. STAT. § 12.110(1).

### III. USAA'S SETTLEMENT OFFER AND KOSOVAN'S CPA CLAIM

Just over two weeks before the statute of limitations was set to expire, USAA offered a $25,000 policy limit settlement to Kosovan. In the offer letter, USAA noted that it "received a PIP subrogation in the amount of $10,000.00," and asked Kosovan to please have Omni or Praxis fax a letter to USAA if she can get Omni or Praxis to waive the subrogation claim. *Id.* at 191.

After receiving the settlement offer from USAA, Kosovan filed a notice to the insurance commissioner under the Insurance Fair Conduct Act (IFCA), RCW 48.30.015, asserting that Omni

was improperly attempting to recover its subrogation claim directly from the tortfeasor. Kosovan then filed a complaint naming Omni and Praxis as defendants on January 10, 2018, claiming that their conduct in pursuing the subrogation claim for PIP benefits paid violated the CPA. Kosovan alleged that Omni and Praxis improperly sought to recover on their subrogation claim because Kosovan had not been "'made whole'" for the injuries she suffered in the collision. *Id.* at 2.

A subrogation recovery adjustor on behalf of Praxis contacted Kosovan's counsel on January 23, 2018 and asked why counsel had not contacted Praxis to inform Praxis of the "made whole" issue prior to filing suit. *Id.* at 418. The representative then asked whether Kosovan's counsel would forgo the CPA suit if Praxis agreed not to pursue the subrogation "lien." *Id.* at 417.

On February 19, 2018, USAA informed Praxis that it would not reimburse Omni for the PIP benefits Omni paid because Kosovan's damages exceeded its policy limits. In light of this information, Praxis responded that it would not seek reimbursement from USAA and that "USAA could settle its claim with [Kosovan]." *Id.* at 410.

Kosovan's claim, however, was not settled until after April 25, 2018, when USAA received written confirmation that Praxis and Omni did not intend to pursue the subrogation claim. After Kosovan's deposition was taken, Praxis sent a letter to Kosovan confirming that it did not intend to pursue its subrogation claim. Kosovan then forwarded Praxis' letter to USAA, at which time USAA disbursed the settlement proceeds to Kosovan.

## IV. PROCEDURAL HISTORY

Praxis moved for summary judgment, seeking dismissal of Kosovan's CPA claim on the basis that it did not commit an unfair or deceptive act when it exercised the right to seek

subrogation for PIP benefits Omni paid to Kosovan. Omni joined Praxis' motion, arguing that the claims against Omni should be dismissed for the same reasons.

The trial court granted Praxis' motion for summary judgment. Although Omni joined in Praxis' motion, the trial court's order only expressly dismissed Kosovan's claims against Praxis and was silent with regard to Kosovan's claims against Omni.

Kosovan appealed the trial court's order to this court under the apparent impression that her claims had been dismissed as to both defendants. We remanded, explaining that because the order didn't specify that it dismissed Kosovan's claims against Omni, those claims were still live, and the trial court order was not appealable as a matter of right under RAP 2.2(d).

Thereafter, Omni moved for summary judgment, arguing that it did not engage in an unfair or deceptive practice, that Kosovan did not suffer an injury caused by its alleged conduct, and that Praxis was an independent contractor and Omni bore no responsibility for Praxis' actions. The trial court granted Omni's motion for summary judgment. Kosovan appeals.

DISCUSSION

I. SUMMARY JUDGMENT STANDARD

We review a trial court's decision to grant summary judgment de novo and conduct the same inquiry as the trial court, considering the facts and all reasonable inferences arising from the facts in the light most favorable to the nonmoving party. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). Summary judgment is properly granted where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c); *Lakey*, 176 Wn.2d at 922. "'A genuine issue of material fact exists when reasonable minds could differ on the facts controlling the outcome of the litigation.'" *Ehrhart v. King County*,

195 Wn.2d 388, 409, 460 P.3d 612 (2020) (quoting *Dowler v. Clover Park Sch. Dist. No. 400*, 172 Wn.2d 471, 485, 258 P.3d 676 (2011)).

When the defendant is the party moving for summary judgment, the defendant bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Burton v. Twin Commander Aircraft LLC*, 171 Wn.2d 204, 222, 254 P.3d 778 (2011). If the defendant successfully makes this initial showing, the inquiry then shifts to the plaintiff. *Id.* at 222-23. The defendant's motion will be granted if the plaintiff fails to present evidence "'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id.* at 223 (internal quotation marks omitted) (quoting *Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 382, 46 P.3d 789 (2002)).

## II. CONSUMER PROTECTION ACT

Kosovan argues that she established, at minimum, a genuine issue of material fact as to each necessary element of a CPA claim and that the trial court erred in granting summary judgment in favor of Omni and Praxis. We agree that the trial court erred in dismissing Kosovan's claims against Omni on summary judgment. However, the trial court properly dismissed Kosovan's claims against Praxis.

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. A party asserting a CPA claim must establish five elements: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that affects the public interest, (4) injury to the party's business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986). We construe the CPA liberally. *Michael v. Mosquera-Lacy*, 165 Wn.2d

595, 602, 200 P.3d 695 (2009). Whether a particular action gives rise to a CPA violation is a question of law that we review de novo. *Svendsen v. Stock*, 143 Wn.2d 546, 553, 23 P.3d 455 (2001).

A. UNFAIR OR DECEPTIVE TRADE PRACTICE

A plaintiff may employ one of three approaches to establish the first element in a CPA claim. *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). The plaintiff must show either "a per se violation of a statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Id.* An act that is either unfair or that is deceptive will satisfy the first element of a CPA claim; it need not be both unfair and deceptive. *Id.*

The first two elements of a CPA action may be collapsed and established where the alleged conduct amounted to a per se unfair trade practice. *Hangman Ridge*, 105 Wn.2d at 785-86. A per se unfair trade practice is a practice conducted in violation of a statute that the legislature has declared "constitute[s] an unfair or deceptive act in trade or commerce." *Id.* at 786.

Here, Kosovan argues that Omni and Praxis engaged in per se unfair or deceptive trade practices. First, Kosovan contends that Omni and Praxis violated their statutory obligation under RCW 48.01.030 to exercise good faith when Praxis sent a claim letter to USAA while Kosovan was negotiating a settlement with the tortfeasor. Second, Kosovan argues that Praxis engaged in an unfair trade practice when it attempted to collect on the subrogation claim without obtaining a license to operate as a collection agency in Washington as required under RCW 19.16.110 within the Collection Agency Act (CAA).

We agree with Kosovan that a genuine issue of material fact exists as to whether Omni breached its statutory duty to handle Kosovan's claim in good faith. Because a genuine issue of material factual remains as to whether Omni engaged in conduct that could amount to an alleged unfair or deceptive trade practice, we cannot resolve the first two elements of Kosovan's CPA claim against Omni as a matter of law. However, the trial court properly dismissed Kosovan's claims against Praxis because Praxis did not engage in a per se unfair or deceptive trade practice, and Kosovan does not assert either of the two remaining non-per se methods for establishing the first element of a CPA claim against Praxis.

### 1. Good Faith

Kosovan argues that both Omni and Praxis are independently bound by the duty to exercise good faith set forth in RCW 48.01.030. She contends further that Omni is not only responsible for its own conduct, but that it is also vicariously liable for Praxis' conduct. Therefore, Kosovan asserts that Omni breached its duty to exercise good faith when Omni prematurely transferred its subrogation claim to Praxis. In addition, Kosovan argues that both Omni and Praxis breached the statutory duty to exercise good faith when Praxis sent a letter to USAA seeking to enforce Omni's subrogation right before that right accrued.

The duty to exercise good faith in RCW 48.01.030 binds Omni as Kosovan's insurer, but Praxis does not owe a coextensive duty to Kosovan under that statute. Consequently, Praxis is not liable for a per se CPA violation predicated on an alleged breach of RCW 48.01.030 as a matter of law.

We must therefore determine whether Omni can be held responsible solely for its conduct or whether its potential liability extends to include Praxis' conduct in sending the claim letter to

USAA. Although a genuine issue of material fact exists as to whether Praxis was Omni's agent or an independent contractor, because the duty to exercise good faith in RCW 48.01.030 is nondelegable, Omni is vicariously liable for Praxis' conduct in sending the letter to USAA under either circumstance. Finally, a genuine issue of material fact remains as to whether Omni breached its duty to exercise good faith based on its act of submitting the claim to Praxis and Praxis' act of sending the letter to USAA.

a. Good Faith Legal Principles

Insurers owe a statutory duty imposed by the legislature in RCW 48.01.030 to exercise good faith when processing an insured's claim. *Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 114 Wn.2d 907, 916, 792 P.2d 520 (1990). RCW 48.01.030 provides,

> The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of insurance.

An insurer that breaches its duty as set forth in RCW 48.01.030 has engaged in a per se unfair or deceptive trade practice in violation of the CPA, thus establishing the first two elements of a CPA claim. *Tank v. State Farm Fire and Cas. Co.*, 105 Wn.2d 381, 394, 715 P.2d 1133 (1986); *see also Hangman Ridge*, 105 Wn.2d at 785-86 (holding that RCW 19.86.020, the statute proscribing unfair and deceptive trade practices, makes out the first two elements in a CPA claim and can be established per se by violation of a legislative enactment that designates a given trade practice as unfair or deceptive); *Salois v. Mut. of Omaha Ins. Co.*, 90 Wn.2d 355, 359, 581 P.2d

1349 (1978) (holding that the jury's verdict that the insurance company breached its duty to exercise good faith in RCW 48.01.030 amounted to a per se violation of RCW 19.86.020).[3]

In *Tank*, the court explained that "[t]he duty to act in good faith or liability for acting in bad faith generally refers to the same obligation," and these terms may be used "interchangeably." 105 Wn.2d at 385. The source of this duty is "the fiduciary relationship existing between the insurer and insured," which "exists not only as a result of the contract between insurer and insured, but because of the high stakes involved for both parties to an insurance contract and the elevated level of trust underlying insureds' dependence on their insurers." *Id.* Because an insurance provider must give "*equal* consideration to an insured[ ] but is not required to put the insured above itself," the relationship between insured and insurer is best described as "'quasi-fiduciary.'" *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 130 n.3, 196 P.3d 664 (2008) (quoting WILLIAM M. SHERNOFF, SANFORD M. GAGE & HARVEY R. LEVINE, INSURANCE BAD FAITH LITIGATION § 1.05 (1991)).

Evidence of intentional bad faith or fraud is not required to sustain a claim that an insurer has breached its duty under RCW 48.01.030. *Kallevig*, 114 Wn.2d at 916-17. Instead, courts consider whether the insurer has acted without "reasonable justification." *Id.* at 917; *see also Whistman v. West Am.*, 38 Wn. App. 580, 585, 686 P.2d 1086 (1984) ("Actions by an insurer done

---

[3] Omni argues that Kosovan cannot maintain a CPA claim based on an allegation that an insurer breached the duty to exercise good faith. Omni is incorrect because as explained above, "[i]t is well established that insureds may bring private CPA actions against their insurers for breach of the duty of good faith." *Peoples v. United Servs. Auto. Ass'n*, 194 Wn.2d 771, 778, 452 P.3d 1218 (2019). Omni also suggests that Kosovan cannot raise the issue of breach of the duty of good faith because she did not assert a stand-alone bad faith cause of action. Because Omni did not identify any legal authority and offered no argument in support of this assertion, we may presume that none exists. *In re Disciplinary Proc. Against Jensen*, 192 Wn.2d 427, 440, 430 P.3d 262 (2018).

without reasonable justification are done without the good faith mandated by RCW 48.01.030.").

Consequently, "[a]n insurance company violates the Washington CPA if it acts without reasonable

justification in handling a claim by its insured." *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 434-

34, 983 P.2d 1155 (1999). Whether an insurer has breached its duty to exercise good faith is a

question of fact. *Tank*, 105 Wn.2d at 383; *see also Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484,

78 P.3d 1274 (2003).[4]

---

[4] In *Keodalah v. Allstate Insurance Company*, 194 Wn.2d 339, 351, 449 P.3d 1040 (2019), when the court held that an insured may not assert a per se CPA claim based on RCW 48.01.030 against an individual claims adjuster, it also stated that "RCW 48.01.030 does not itself provide an actionable duty." This statement referenced an issue addressed earlier in the opinion wherein the court held that RCW 48.01.030 does not create an implied cause of action. *Id.* at 349. To the extent that the court's statement that "RCW 48.01.030 does not itself provide an actionable duty" may be interpreted as barring a per se CPA claim based solely on a violation of RCW 48.01.030, it is dicta. In addition to its discussion regarding whether the duty in RCW 48.01.030 creates an implied cause of action for insurance bad faith, the court separately considered whether an insured could assert a per se CPA claim against an insurance adjuster based on RCW 48.01.030. *Id.* After asserting that RCW 48.01.030 did not create an actionable duty, the court went on to explain that the reason the insured could not rely on RCW 48.01.030 to sustain a per se CPA claim in that case was because the duty of good faith was limited to the insurer-insured relationship, and the insurance adjuster was not part of this relationship. *Id.* at 352-53. The court clarified that the insured could sue the insurer for a breach of the statutory duty of good faith under the CPA, but not the adjuster. *Id.* at 352. Following from this reasoning, the court's remark that RCW 48.01.030 did not create an actionable duty was not necessary to its holding that the insured could not assert a per se CPA claim against an employee adjuster. *Id.* at 352-53; *see also Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 215, 220, 304 P.3d 914 (2013) ("A statement is dicta when it is not necessary to the court's decision in a case."). "Dicta is not binding authority." *Protect the Peninsula's Future*, 175 Wn. App. at 215. Therefore, we do not interpret *Keodalah* as necessarily precluding CPA claimants from establishing an unfair or deceptive trade practice per se based on a breach of the statutory duty of good faith RCW 48.01.030.

b. Application

*i. Praxis Does Not Owe a Duty to Kosovan under RCW 48.01.030*

Kosovan argues that Praxis is bound by the duty to exercise good faith in RCW 48.01.030 because that statute applies to "'representatives and advisors'" of insurers, and Praxis fits within this description. Br. of Appellant at 14. We disagree.

The supreme court has considered an analogous issue in *Keodalah v. Allstate Insurance Co.*, 194 Wn.2d 339, 449 P.3d 1040 (2019). There, the court held that an insured may assert a claim alleging a per se violation of the CPA based on breach of the statutory duty to exercise good faith against an insurer, but the insured could not raise the same claim against an individual claims adjuster employed by the insurer. *Id.* at 352-53. The court reasoned that the duty in RCW 48.01.030 does not extend to "someone outside the quasi-fiduciary relationship" that exists between an insurer and its insured. *Id.*

Praxis was "someone outside the quasi-fiduciary relationship" that existed between Kosovan and her insurer. *Id.* at 353. In *Tank*, the court described the nature of the quasi-fiduciary relationship between insured and insurer, explaining that it arises not only as a result of their privity of contract but also due to the mutual high stakes involved and the insured's underlying dependence and trust in its insurer. *See* 105 Wn.2d at 385. Here, Praxis did not provide insurance to Kosovan, and there was no privity of contract between Praxis and Kosovan. Moreover, Kosovan did not have a relationship of trust and underlying dependence on Praxis similar to that between an insured and an insurer. Consequently, Praxis did not owe a duty to Kosovan under RCW

48.01.030, and Kosovan cannot sustain a CPA claim against Praxis predicated on a breach of this statutory duty. *See Keodalah*, 194 Wn.2d at 353.[5]

*ii. Omni is Vicariously Liable for Praxis' Actions*

Kosovan argues that Omni's liability for breach of the duty to exercise good faith extends beyond Omni's own conduct in transferring the subrogation claim to Praxis and includes Praxis' act of sending the claim letter to USAA. Kosovan asserts that there is a genuine dispute of material fact as to whether Praxis was Omni's agent, thus rendering Omni vicariously liable as Praxis' principal. Even if Praxis were an independent contractor as opposed to an agent, Kosovan asserts that Omni could not delegate its duty to exercise good faith and is nevertheless vicariously liable for Praxis' actions.

Omni responds that the record conclusively establishes that Praxis was an independent contractor because once Omni transferred its subrogation claim against USAA to Praxis, Omni ceded all control over the processes involved in collecting on that claim. Omni thus asserts that it bears no responsibility for Praxis' actions, and Omni does not address Kosovan's contention that the duty to exercise good faith is nondelegable. We agree with Kosovan.

---

[5] In support of her argument that Praxis is bound by the duty to exercise good faith in RCW 48.01.030, Kosovan relies on *Merriman v. American Guarantee and Liability Insurance Co.*, 198 Wn. App. 594, 396 P.3d 351 (2017). In *Merriman*, Division III of this court held that an adjustment firm contracted by the insurer was bound by the statutory duty of good faith because the adjustment firm was "a 'person' engaged in 'the business of insurance' and a representative of [the insurer]." 198 Wn. App. at 612 (quoting RCW 48.01.030). Division I of this court relied on this reasoning in *Merriman* when it held that an individual adjuster can be independently liable for a breach of the duty to exercise good faith in *Keodalah v. Allstate Insurance Co.*, 3 Wn. App. 2d 31, 40, 413 P.3d 1059 (2018). The supreme court reversed Division I's decision in *Keodalah* and held that the statutory duty in RCW 48.01.030 binds insurers but not the insurer's agents because the duty arises from an insurer's quasi-fiduciary relationship with an insured. *Keodalah*, 194 Wn.2d at 352-53. Therefore, to the extent that the reasoning in *Merriman* is inconsistent with the supreme court's holding in *Keodalah*, *Merriman* has been overruled on that point. *See id.*

A principal may be held accountable for the actions of its agent. *Thornell v. Seattle Serv. Bureau, Inc.*, 184 Wn.2d 793, 803, 363 P.3d 587 (2015). However, a principal will generally avoid liability for harm caused by the actions of an independent contractor. *Wilcox v. Basehore*, 187 Wn.2d 772, 789, 389 P.3d 531 (2017). To determine whether a relationship between two entities engaged in a business agreement "is a principal-agent relationship or an 'independent contractorship[,] . . . the most crucial factor is the right to control the details of the work.'" *Id.* (quoting *Larner v. Torgerson Corp.*, 93 Wn.2d 801, 804-05, 613 P.2d 780 (1980)). If the principal does not retain a right to control the other entity's work, then that other entity is an independent contractor. *Id.* at 790. Whether an entity is an agent or an independent contractor "'can only be decided as a matter of law where there are no facts in dispute and the facts are susceptible of only one interpretation.'" *Id.* (quoting *Graves v. P.J. Taggares Co.*, 94 Wn.2d 298, 302-03, 616 P.2d 1223 (1980)).

Here, the facts are disputed and susceptible to multiple interpretations. For example, language in the services agreement between Omni and Praxis indicates that Praxis was an independent contractor because Omni did not retain control over whether and when to pursue a subrogation claim. *See id.* Under the agreement, Praxis "perform[s] recovery services on behalf of [Omni]," and "will identify, investigate, pursue and collect recovery against third parties." CP at 177. In addition, Praxis "will review claims . . . and select claims having recovery potential to investigate, perfect and pursue subrogation." *Id.* at 178. Therefore, the services agreement indicates that Praxis is solely responsible for investigating a claim and determining whether to pursue subrogation. *See Wilcox*, 187 Wn.2d at 790.

In contrast, Praxis submitted discovery responses stating that it did not conduct its own investigation prior to asserting Omni's right to subrogation in the letter submitted to USAA. As will be explained more fully below, Omni did not have a right to subrogation or reimbursement before Kosovan was fully compensated for the loss she sustained in the accident. *See Daniels v. State Farm Mut. Auto. Ins. Co.,* 193 Wn.2d 563, 576, 444 P.3d 582 (2019). But when asked whether Praxis investigated the extent of Kosovan's damages, Praxis answered that it "acted on the direction and information received from Omni, and pursuant to its agreement with Omni." CP at 298. Praxis later elaborated that it did not conduct its own investigation into the extent of Kosovan's damages.

Similarly, when asked whether Praxis investigated whether Roland's policy had sufficient coverage to pay for Kosovan's damages, Praxis responded that it "acted on the direction and information received from Omni, and pursuant to its agreement with Omni." *Id.* at 299. Praxis explained that it "did not conduct an investigation for the purpose of determining the limits of liability coverage available to Mr. Roland under his policy with USAA or whether such limits could pay for all of [Kosovan's] damage." *Id.* at 299-300. Therefore, unlike the services agreement, this evidence reflects that Praxis relied solely on "direction and information" from Omni and that it did not conduct its own investigation to determine whether Kosovan was fully compensated for her losses before sending the letter to USAA. *Id.* at 298-99.

Evidence in the record conflicts as to which entity, Omni or Praxis, had control over the decision of whether and when to seek subrogation, and it is this particular decision that forms the basis of Kosovan's breach of the statutory duty to exercise good faith claim. Consequently, we cannot determine whether Praxis was an agent or an independent contractor as a matter of law.

If Praxis was Omni's agent and it engaged in conduct that amounted to a breach of the statutory duty to exercise good faith, then Omni can be held accountable under the CPA for breach of the statutory duty to exercise good faith based on Praxis' conduct. *See Keodalah*, 194 Wn.2d at 352 n.7. However, Kosovan contends that because Omni cannot delegate its duty to exercise good faith to an independent contractor, Omni is vicariously liable for Praxis' conduct in any event. We agree with Kosovan.

A nondelegable duty is "'[a] duty for which the principal retains primary (as opposed to vicarious) responsibility for due performance even if the principal has delegated performance to an independent contractor.'" *Vargas v. Inland Wash., LLC*, 194 Wn.2d 720, 738, 452 P.3d 1205 (2019) (alteration in original) (quoting BLACK'S LAW DICTIONARY 638 (11th ed. 2019)). Washington courts refer to the responsibility arising from a nondelegable duty as "vicarious liability," although *Black's Law Dictionary* refers to a nondelegable duty as a primary responsibility. *Id.* (citing *Afoa v. Port of Seattle*, 191 Wn.2d 110, 421 P.3d 903 (2018); *Millican v. N.A. Degerstrom, Inc.*, 177 Wn. App. 881, 896-97, 313 P.3d 1215 (2013)).

In *Keodalah*, the supreme court referenced the nondelegable duty doctrine when it held that an insured may raise a claim under the CPA for an insurer's breach of the duty of good faith based on the actions of an employee adjuster. 194 Wn.2d at 353 n.7. The supreme court addressed several cases that discuss the principal and agent relationship, and it also cited *Carabba v. Anacortes School District No. 103*, 72 Wn.2d 939, 956-58, 435 P.2d 936 (1967) for the assertion that "a principal who is under a duty to provide protection for others or their property and who confides the performance of such duty to a servant is subject to liability for harm caused to such others by the failure of the agent to perform the duty." *Koedalah*, 194 Wn.2d at 353 n.7. This

language is nearly identical to the Restatement (Second) of Agency § 214 (1958), entitled "Failure of Principal to Perform Non-delegable Duty."[6] *Compare* Restatement (Second) of Agency § 214 (1958) *with Keodalah*, 194 Wn.2d at 353 n.7.

The supreme court in *Carabba* adopted the nondelegable duty doctrine when it applied § 214 and held that the duty of protection owed by a school district to students engaged in extracurricular activities was nondelegable. 72 Wn.2d at 956-58. Therefore, when the court in *Keodalah* cited *Carabba* in discussing an insured's ability to assert a CPA claim against an insurer based on breach of the duty to exercise good faith, and when it closely echoed the language in § 214, the supreme court signaled that the nondelegable duty doctrine applies in the insurance good faith context. 194 Wn.2d at 353 n.7.

We expand on *Keodalah* and conclude that the duty to exercise good faith imposed on insurers under RCW 48.01.030 is nondelegable. This result comports with the statement of public interest in RCW 48.01.030 that "all persons be actuated by good faith." As stated above, the duty to exercise good faith in RCW 48.01.030 does not apply to an entity outside the quasi-fiduciary relationship between an insurer and an insured. *Keodalah*, 194 Wn.2d at 352-53. If an insurer delegates a responsibility it owes under its policy with an insured to an independent contractor and that independent contractor is not also bound by the duty to exercise good faith under RCW

---

[6] Section 214 of the Restatement (Second) of Agency states,

> A master or other principal who is under a duty to provide protection for or to have care used to protect others or their property and who confides the performance of such duty to a servant or other person is subject to liability to such others for harm caused to them by the failure of such agent to perform the duty.

48.01.030, then the protection afforded to an insured under RCW 48.01.030 may become substantially curtailed.

Regardless of whether Praxis was Omni's agent or an independent contractor, the result is the same: Omni can be held responsible for a breach of the duty to exercise good faith in RCW 48.01.030 based on its own act of submitting the subrogation claim to Praxis for collection without ensuring that it had a right to recover the benefits it paid, and it can be held responsible for Praxis' act in sending the subrogation claim letter to USAA.

*iii. A Genuine Issue of Fact Remains as to Whether Omni Breached the Duty to Exercise Good Faith in RCW 48.01.030*

Kosovan argues that, according to general subrogation principles and the particular terms of her insurance policy, Omni did not have a right to recover PIP benefits it paid before she had been "made whole" for her losses. Br. of Appellant at 15. Kosovan contends that therefore, there is at least a genuine dispute of material fact as to whether Omni acted without reasonable justification in breach of the duty to exercise good faith under RCW 48.01.030 when Omni sought recovery of PIP benefits from USAA before it had a right to recover.

Omni and Praxis construe Kosovan's argument as a broad-sweeping attempt to eliminate an insurer's right to subrogation where an insured pursues a claim against the tortfeasor, which they claim would subvert longstanding subrogation principles and undermine the provisions of Omni's policy with Kosovan. Neither Omni nor Praxis dispute that Omni did not have a right to recover on its subrogation claim. But Omni and Praxis contend that making only an "attempt" at subrogation recovery, even where the right has not yet accrued, is not an unfair or deceptive act. Omni and Praxis further caution that forbidding an insurer from making a mere attempt to collect on a subrogation claim places insurers at risk of losing subrogation rights where an insured does

not make a decision with regard to whether to pursue a direct claim against the tortfeasor before the statute of limitations for that claim expires.

We agree with Kosovan. A genuine dispute of material fact remains as to whether Omni's conduct amounted to a breach of the duty to exercise good faith when, without first determining whether Kosovan had been made whole or whether Omni had a right to subrogation, Omni attempted to recover its PIP benefits.

The purpose underlying the subrogation doctrine is "to impose ultimate responsibility for a wrong or loss on the party who, in equity and good conscience, ought to bear it." *Mahler v. Szucs*, 135 Wn.2d 398, 411, 957 P.2d 632 (1998). Subrogation involves two features: "The first is the right to reimbursement. The second is the mechanism for the enforcement of the right." *Id.* at 412. As here, an insurer's right to subrogation may arise from a contractual provision.[7] *See id.*

A subrogated insurer may enforce its right to recover by using one of two methods. *Id.* at 413. When an insured brings a claim against the third party tortfeasor, the insurer may seek reimbursement from the insured's recovery that the insured obtained from the tortfeasor. *Id.* In the alternative, "the [insurer,] standing in the shoes of [the insured,] may pursue an action . . . against the third party." *Id.*

---

[7] Kosovan argues for the first time in her reply brief that her insurance policy with Omni does not contain a proper subrogation provision. In her opening brief, Kosovan recognized that the policy contained a subrogation provision in paragraph (A) of her policy. We do not consider arguments raised for the first time in a reply brief. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Even if we considered this argument on is merits, Kosovan is incorrect. We have previously held that language identical to that in paragraph (A) was a classic and proper subrogation clause. *Compare Meas v. State Farm Fire & Cas. Co.*, 130 Wn. App. 527, 535, 123 P.3d 519 (2005) *with* CP at 52.

Regardless of the insurer's chosen mechanism for enforcing its right, "'[t]he potential for conflict of interest abounds.'" *Daniels*, 193 Wn.2d at 570 (alteration in original) (quoting *Mahler*, 135 Wn.2d at 414). The conflict arises due to the fact that, "if the insured still has uncompensated injuries, both the insurer and insured will generally be looking to recover from the same third party, and that party's own insurance and assets are not always sufficient to cover both claims." *Id.* Conflicts are more likely when an insurer seeks subrogation for a personal injury loss rather than a property loss, because unlike a property loss, personal injury losses are often not readily or objectively ascertainable. *Mahler*, 135 Wn.2d at 414.

To prevent conflicts between an insured and an insurer, Washington courts "have generally established priority for the interests of the insureds through the made whole doctrine." *Daniels*, 193 Wn.2d at 571; *see also Thiringer v. Am. Motors Ins. Co.*, 91 Wn.2d 215, 219, 588 P.2d 191 (1978). An insurer, therefore, "cannot obtain a recovery if its insured has uncompensated damages." *Daniels*, 193 Wn.2d at 572. The supreme court has recently reaffirmed this principal, holding that "[w]hether in the context of a reimbursement request, offset, or direct subrogation action, a fault-free insured must be made whole for their entire loss before an insurer may offset or recover its own payments." *Id.* at 576. Therefore, the right to reimbursement does not exist for an insurer until the insured is fully compensated. *Mahler*, 135 Wn.2d at 417 (citing *Thiringer*, 91 Wn.2d at 219-20).

Here, there is no dispute that Kosovan had not been fully compensated for damages by the time Praxis sent its letter to USAA. The settlement offer from USAA was submitted after Praxis sent its letter. And USAA's offer of policy limits did not fully compensate Kosovan for her damages. Moreover, Omni's policy expressly provided that Omni was entitled to subrogation

"only after the person has been fully compensated for damages." CP at 53. Consequently, Omni had no right to recovery under the terms of its own policy or under general public policy principles. S*ee Daniels*, 193 Wn.2d at 572.

Omni and Praxis contend however, that even if Omni had no right to recover, Omni and Praxis were entitled to pursue Omni's subrogation claim before Kosovan was fully compensated for her losses as a matter of law. This argument is without merit because it undermines the very purpose of the made whole doctrine, which seeks to avoid conflicts arising from the simultaneous pursuit of claims arising from the same injury against a single tortfeasor. *Id.* at 570; *see also Mahler*, 135 Wn.2d at 414.

Omni and Praxis rely on *Hamilton v. Farmers Insurance Co.*, 107 Wn.2d 721, 734, 733 P.2d 213 (1987) and *Daniels* in arguing that an insurer may attempt recover on subrogation before an insured is made whole. Both cases are distinguishable and neither case stands for the general assertion that an insurer can pursue a subrogation claim to recover its own expenditure without any regard to the insured's right to be fully compensated.

In *Hamilton*, the insured negotiated a settlement with the tortfeasor for its policy limits, but the settlement included a release of all claims against the tortfeasor. 107 Wn.2d at 724. The insurer argued that the insured would be in breach of its policy because in agreeing to a release, the insured prejudiced the insurer's rights to subrogation from the tortfeasor. *Id.* at 725. The court held that the insurer could protect its subrogation interest and "succeed to the rights of its insured against the tortfeasor" in such circumstances by paying the underinsured motorists benefits and "substituting a payment to the insured in an amount equal to the tentative settlement." *Id.* at 734. The insurer can "then can pursue the insured's rights against the tortfeasor," and any recovery over

the amount of the substituted settlement must first apply to the insured's remaining uncompensated damages. *Id.*

Although the *Hamilton* court contemplated a circumstance where an insurer could pursue subrogation before an insured was fully compensated, the court first required the insurer to pay the insured an amount equivalent to the settlement that would have been reached before the insurer had any right to subrogation. *Id.* The court, in so holding, did not allow an insurer to freely pursue subrogation claims to recover a benefit it paid to its insured without regard to whether its insured had been compensated for damages.

In *Daniels*, the insurer paid the insured for the entire cost of the damage to her vehicle, less the amount of her deductible. 193 Wn.2d at 568. The court held that the insurer was required to refund the insured for the value of the deductible before it recovered or offset its own payment. *Id.* at 576. Although the insurer could attempt to recoup its payment before its insured was technically whole because the deductible was an outstanding damage, the court did not suggest that an insurer was free to pursue its subrogation claim irrespective of whether its insured had been fully compensated, as Omni and Praxis contend. *Id.*

Here, unlike in *Daniels*, Omni did not fully compensate Kosovan for the damages she sustained less an insurance deductible. Rather, Omni paid Kosovan $10,000 in PIP benefits when her total damages, as Kosovan identified in her PIP benefit request form, were over $38,000. Thus, there is at least a genuine issue of material fact that when Omni and Praxis sought to recover the $10,000 in PIP benefits Omni paid to Kosovan, the direct subrogation action was intended only to compensate Omni for its payment and was made without any consideration of whether Kosovan had outstanding, uncompensated damages. Such pursuit of a direct subrogation claim can create a

conflict with the insured's right to recovery and violates the made whole doctrine. *See id.* at 572 (explaining that the made whole doctrine "'embodies a policy deemed socially desirable in this state,' as it prioritizes the indemnification of victims of automobile accidents, and, in doing so, helps to reduce the potential conflicts between insurers and insureds.") (quoting *Thiringer*, 91 Wn.2d at 220).

Kosovan raises a genuine issue of material fact with regard to whether Omni breached the duty to exercise good faith. Given that the made whole doctrine is well established and that Omni's policy expressly incorporates the made whole policy in its terms, reasonable minds could conclude that Omni and Praxis acted without reasonable justification, and thereby in breach of the statutory duty in RCW 48.01.030 when Omni transferred the subrogation claim to Praxis for collection and when Praxis asserted Omni's right to recovery in the letter to USAA. *See id.* at 576; *see also Kallevig*, 115 Wn.2d at 917.

The record reflects that neither Omni nor Praxis investigated whether Kosovan had received full compensation for her damages, and the record conflicts with regard to which entity bore the responsibility to determine when the right to subrogation accrued. If Omni was responsible for investigating when subrogation may be sought against a third-party tortfeasor, a genuine issue of fact remains as to whether it acted without reasonable justification when it prematurely submitted the subrogation claim to Praxis for collection. Even if Praxis was responsible for investigating the subrogation potential of the claim, because Omni cannot delegate its duty to exercise good faith under RCW 48.01.030, a genuine issue of material fact nevertheless

remains as to whether Omni was vicariously liable for Praxis' attempt to assert Omni's subrogation right without regard to whether that right existed.[8]

Because a genuine issue of material fact remains as to whether Omni engaged in conduct that could amount to a per se unfair and deceptive trade practice, we cannot resolve the first two elements of Kosovan's CPA claim against Omni as a matter of law.

2. Licensing as a Collection Agency

Kosovan argues that Praxis committed a separate per se unfair or deceptive trade practice because Praxis operated as a collection agency in Washington without first obtaining the requisite license under former RCW 19.16.440 (1994)[9] of the CAA. Praxis responds that it was not collecting a "claim" under the CAA, nor was it a "collection agency" as defined under the CAA.

---

[8] Distinct from the limitation on the right to seek subrogation based on the made whole doctrine, Kosovan also relies on *Mahler* to argue that Omni and Praxis could not pursue the subrogation claim because she had not yet abandoned her own claim against the tortfeasor. Omni and Praxis contend that there is no general prohibition against seeking subrogation until an injured insured has abandoned a claim against the tortfeasor. Omni and Praxis further assert that Omni's policy likewise does not contain a provision limiting the right to seek subrogation based on whether the insured has decided not to pursue a claim against the tortfeasor. Omni and Praxis are correct.

The court in *Mahler* did not proclaim, as a matter of general public policy, that insurers cannot seek subrogation unless the insured abandons all claims against the tortfeasor. *See* 135 Wn.2d at 419. Instead, the court analyzed specific policy language and concluded that based on that language, the insurer "reserved a traditional subrogation right to sue in the shoes of the insured *only* when it makes PIP payments to the insured and the insured does not pursue a tortfeasor." *Id.* at 421. Omni's policy did not contain a similar limitation on its right to subrogation. Instead, there was a limitation of Omni's right to seek subrogation based on the made whole doctrine.

[9] Former RCW 19.16.440 provides,

The operation of a collection agency or out-of-state collection agency without a license as prohibited by RCW 19.16.110 and the commission by a licensee or an employee of a licensee of an act or practice prohibited by RCW 19.16.250 are declared to be unfair acts or practices or unfair methods of competition in the conduct of trade or commerce for the purpose of the application of the Consumer Protection Act found in chapter 19.86 RCW.

Br. of Resp't Praxis at 29. We agree with Praxis that because the CAA does not apply to subrogation claims, Praxis did not commit a per se unfair or deceptive trade practice when it did not obtain a license to operate as a collection agency.

In *Panag v. Farmers Insurance Co.*, 166 Wn.2d 27, 52, 204 P.3d 885 (2009), the court held that the CAA does not "regulate[ ] the collection of insurance subrogation claims." It explained that under the CAA, a "'[c]laim' [is defined] as an obligation 'arising out of any agreement or contract, express or implied.'" *Id.* (alteration in original) (quoting RCW 19.16.100(5)). "[S]ubrogation exists only with respect to rights of the insurer against third persons." *Mahler*, 135 Wn.2d at 419. Because a subrogation claim asserted against a third party does not arise out of any agreement between the insurer and the third party, a subrogation claim does not fit the definition of a claim within the CAA. *Panag*, 166 Wn.2d at 52.

Praxis provides subrogation recovery services to Omni. Therefore, Praxis' subrogation recovery activities are not governed by the CAA and Praxis is not obligated under the CAA to satisfy its licensing requirements. *See id.* Consequently, Kosovan's assertion that Praxis engaged in a per se unfair or deceptive trade practice when it failed to obtain a license to operate as a collection agency fails as a matter of law.

      3. Unfair or Deceptive Trade Practice Summary

Kosovan's CPA claim against Praxis was properly dismissed on summary judgment as a matter of law because Praxis did not engage in a per se unfair trade practice under either theory Kosovan alleges. Because Kosovan did not assert either of the two remaining methods for establishing the first element of a CPA claim against Praxis, Kosovan did not meet her burden on summary

judgment of presenting sufficient evidence as to every element essential to her claim on which she would bear the burden of proof at trial. *See Burton*, 171 Wn.2d at 223.

With regard to Omni, however, there remains a genuine dispute of material fact as to whether it breached its duty as Kosovan's insurer to exercise good faith under RCW 48.01.030. Because an insurer that breaches its duty in RCW 48.01.030 has engaged in a per se unfair or deceptive trade practice, Kosovan's claim withstands summary judgment with respect to the first two elements of a CPA claim. *See Tank*, 105 Wn.2d 381; *Hangman Ridge*, 105 Wn.2d at 785-86. We must therefore move on to consider whether a genuine issue of material fact exists, precluding summary judgment, as to the remaining three elements of Kosovan's CPA claim against Omni.

B. EFFECT ON PUBLIC INTEREST

Kosovan argues that she has established the public interest element of her CPA claim because RCW 48.01.030 contains a legislative declaration of public interest and breach of the duty to exercise good faith under RCW 48.01.030 satisfies the public interest requirement in the CPA per se. Both Omni and Praxis argue that a single letter sent between two insurance companies does not implicate the public interest. We agree with Kosovan.

The third element of a CPA claim may be established per se by showing a violation of a statute that "contains a specific legislative declaration of public interest impact." *Hangman Ridge*, 105 Wn.2d at 791. As expressly set forth in RCW 48.01.030, "The business of insurance is one affected by the public interest." Violation of RCW 48.01.030, therefore, implicates the public interest and satisfies the third element of a CPA claim per se. *Hangman Ridge*, 105 Wn.2d at 791; *see also Keodalah*, 194 Wn.2d at 350. Because a genuine dispute of material fact remains as to whether Omni engaged in conduct that could amount to a breach of the duty to exercise good faith

in RCW 48.01.030, a genuine dispute of material fact likewise remains as to whether Omni engaged in unfair or deceptive trade practice that implicates the public interest.

C. INJURY

Kosovan argues that she has established an injury within the meaning of the CPA because her settlement from USAA was delayed by Praxis' assertion of Omni's subrogation claim. Kosovan contends that in addition to the delay of her settlement, she suffered an injury related to the time expended by her attorney in investigating and addressing Praxis and Omni's subrogation demand, including the nominal expense incurred in postage used to submit a complaint to the insurance commissioner.

Omni responds that the cost of litigating a CPA claim does not constitute an actionable injury under the CPA, and Kosovan's postage expenditure in submitting a complaint to the insurance commissioner is such a cost. Praxis adds that Kosovan's unsupported assertion that her counsel spent time and took steps to investigate the subrogation demand does not provide sufficient evidence of injury to withstand summary judgment. We agree with Kosovan that she has established a genuine issue of material fact as to whether she suffered a cognizable injury under the CPA.

1. Legal Principles

Under the CPA, a compensable injury is limited to an "'injury to [the] plaintiff in his or her business or property.'" *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 431, 334 P.3d 529 (2014) (alteration in original) (quoting *Hangman Ridge*, 105 Wn.2d at 780). Injuries that raise an actionable claim under the CPA are "relatively expansive," and include those that are "both

minimal and temporary." *Id.* Claimants are not required to demonstrate a quantifiable monetary loss because the CPA addresses injuries as opposed to damages. *Id.*

Expenses incurred in investigating an unfair or deceptive act can establish an injury under the CPA. *Univ. of Wash. v. Gov't Emps. Ins. Co.*, 200 Wn. App. 455, 476, 404 P.3d 559 (2017). However, costs expended in instituting the CPA action itself do not make out an injury under the CPA. *Panag*, 166 Wn.2d at 60.

2. Application

The time that elapsed between USAA's provision of a settlement offer to Kosovan and execution of the settlement can amount to an injury under the CPA. *See Mason v. Mortgage America Inc.*, 14 Wn.2d 842, 854, 792 P.2d 142 (1990) ("A loss of use of property which is causally related to an unfair or deceptive act or practice is sufficient injury to constitute the fourth element of a Consumer Protection Act violation."). Even a transient injury to business or property can constitute an injury under the CPA. *See Frias*, 181 Wn.2d at 431.

Here, USAA submitted a letter containing its offer to settle and referencing a need for Omni's waiver of its subrogation claim on November 7, 2017. Praxis' recovery adjuster did not contact USAA to let USAA know that Praxis did not intend to pursue the subrogation claim until February 19, 2018. USAA then executed the settlement after April 25, 2018, when Kosovan submitted a letter in which Praxis disclaimed its intent to pursue subrogation in writing. There is, therefore, a genuine dispute of material fact as to whether Kosovan experienced an injury within the scope of the CPA based on the delay she experienced in receiving the settlement.

In addition, the cost of postage Kosovan expended in submitting a notice to the insurance commissioner regarding the subrogation claim could also establish an injury under the CPA

because it was related to investigating the unfair act or practice. *See Univ. of Wash.*, 200 Wn. App. at 476. Kosovan sent her IFCA notice to the insurance commissioner, asserting that Omni improperly attempted to recover its subrogation claim. The CPA is a separate legislative enactment from the IFCA, and reasonable minds could differ as to whether the notice Kosovan's counsel filed pursuant to the IFCA had anything to do with institution of Kosovan's CPA violation claim. Although costs expended in instituting a CPA action are not compensable injuries under the CPA, the expense incurred in filing the IFCA notice was not necessarily such a cost. *See Panag*, 166 Wn.2d at 60. Consequently, a genuine issue of material fact exists as to whether the nominal expense Kosovan incurred in filing the IFCA notice amounts to an injury within the scope of the CPA.

D. PROXIMATE CAUSATION

Kosovan argues that the injury she suffered related to the delay in her settlement was proximately caused by Omni and Praxis' actions in improperly attempting to recover on Omni's subrogation claim. Omni and Praxis respond that the only evidence that Kosovan's settlement was delayed by the attempt to recover Omni's subrogation claim is an inadmissible hearsay statement contained in a declaration from Kosovan's counsel.

In addition, Omni asserts that any delay in finalizing the settlement was proximately caused by Kosovan because Kosovan did not alert Omni or Praxis that Kosovan had not yet been made whole after Kosovan received a copy of the subrogation claim letter, and Kosovan did not attempt to directly resolve the dispute with Omni or Praxis when she received the settlement offer from USAA. Praxis argues that USAA proximately caused the delay in settlement because it should

have known that Omni would have no right to assert a subrogation claim when it paid the policy limits to Kosovan.

We agree with Kosovan. A genuine issue of material fact exists as to whether the delay in settling Kosovan's claim against the tortfeasor was proximately caused by Omni and Praxis' attempt at subrogation recovery. In addition, a genuine issue of material fact exists with regard to whether Omni and Praxis' attempt at subrogation recovery was the proximate cause of the Kosovan's nominal injury in expending postage costs when she sent an IFCA notice.

To establish the causation element of a CPA claim, "[a] plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 83, 170 P.3d 10 (2007). In addition, "[p]roximate cause is a factual question to be decided by the trier of fact." *Id.* Generally, proximate cause issues are "'not susceptible to summary judgment.'" *Swank v. Valley Christian Sch.*, 188 Wn.2d 663, 685, 398 P.3d 1108 (2017) (quoting *Owen v. Burlington N. Santa Fe R.R. Co.*, 153 Wn.2d 780, 788, 108 P.3d 1220 (2005)).

Here, the USAA letter and Praxis' conduct upon learning that Kosovan had not been made whole by the tortfeasor presents some evidence that Kosovan's settlement was impacted by Omni and Praxis' assertion of their subrogation right. Omni and Praxis are thus incorrect in arguing that the only evidence showing a causal connection between their attempt at subrogation recovery and the delay in settlement was a hearsay statement in a declaration submitted by Kosovan's counsel.

USAA's letter offering a settlement to Kosovan referenced Omni's subrogation claim, stating that the $25,0000 settlement was a "a total offer which would include any and all liens . . . Also we received a PIP subrogation in the amount of $10,000.00. If you are able to have get

Omni\Praxis waive the subrogation please have them fax USAA a letter." CP at 191. Reasonable minds could conclude that the language in USAA's letter indicated that provision to Kosovan of the entire $25,000 settlement offer was contingent on Omni and Praxis waiving their subrogation claim in a writing submitted to USAA.

In addition, Praxis knew at least by January 23, 2018, when Kosovan filed her CPA lawsuit, that Kosovan had not been fully compensated for her injuries by the offer of policy limits from USAA and that Praxis and Omni's subrogation "lien" may have impeded Kosovan's settlement with USAA. CP at 139. Praxis responded to the suit by asking whether, if it submitted a letter releasing the subrogation claim, Kosovan would dismiss her CPA suit. However, it was not until February 19, 2018, after USAA contacted Praxis to let Praxis know that it would not reimburse Omni for the PIP benefit, that Praxis informed USAA it did not intend to pursue the subrogation claim. And Praxis' recovery adjuster informed USAA that because it would not seek reimbursement, "USAA could settle its claim with [Kosovan]." *Id.* at 410. USAA did not furnish the settlement until after April 25, 2018, when Kosovan provided USAA with a letter in which Praxis affirmed its intent to no longer pursue subrogation. This evidence, when considered in the light most favorable to Kosovan, raises a genuine issue of material fact as to whether Omni and Praxis' attempt at subrogation recovery delayed the settlement.

The parties' dispute with respect to whether USAA, Kosovan, or Omni and Praxis were responsible for the delay in effectuating Kosovan's settlement further illuminates the genuine issue of material fact that persists with regard to proximate causation. Determining who among them caused the delay should be left to the trier of fact and cannot be resolved now as a matter of law. *See Indoor Billboard*, 162 Wn.2d at 83.

Separately, when Kosovan filed her IFCA notice, she explained that the basis of her claim was Omni's attempt to recover its subrogation claim from the tortfeasor. To the extent that postage expenditure is a compensable injury under the CPA, Kosovan has raised a genuine issue of material fact as to whether Omni and Praxis' attempt to recover subrogation was a proximate cause for that injury. *Id.* That is to say, Kosovan would have not had to submit an IFCA notice but for Omni and Praxis' attempt to recover subrogation. *See id.*

Proximate causation is the fifth and final element of Kosovan's CPA claim on which Kosovan bears the burden of proof at trial. *See Hangman Ridge*, 105 Wn.2d at 785. As set forth in the foregoing discussion, Omni has failed to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact with regard to each element of Kosovan's CPA claim against Omni, and Omni is not entitled to summary judgment as a matter of law.

## ATTORNEY FEES

Kosovan argues that she is entitled to attorney fees on appeal under RCW 19.86.090 as a successful CPA claimant. RCW 19.86.090 provides in relevant part that,

> Any person who is injured in his or her business or property by a violation of RCW 19.86.020 . . . may bring a civil action in superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee.

We disagree that Kosovan is entitled to attorney's fees on appeal. Kosovan is not yet a successful CPA claimant as we have not determined whether Omni's acts or practices give rise to a CPA violation. Rather, we have determined only that the trial court erred in dismissing Kosovan's CPA claims against Omni as a matter of law.

CONCLUSION

We hold that because a genuine issue of material fact remains as to each element of Kosovan's CPA claim asserted against Omni, the trial court erred when it dismissed Kosovan's claims against Omni as a matter of law. However, we hold that because Praxis did not commit a per se unfair or deceptive trade practice under either theory Kosovan alleged, and because Kosovan did not assert one of the remaining non-per se methods for establishing the unfair or deceptive act element of her CPA claim against Praxis, the trial court properly granted Praxis' motion for summary judgment.

Accordingly, we reverse the trial court's order granting summary judgment in favor of Omni, affirm the trial court's order granting summary judgment in favor of Praxis, and we remand for further proceedings consistent with this opinion.

CRUSER, J.

I concur:

WORSWICK, J.

35

LEE, C.J. (concurring in part, dissenting in part) — I agree with the majority's decision reversing the order granting summary judgment as to Omni Insurance Company (Omni). However, I disagree with the majority's determination that the superior court properly granted summary judgment against Praxis Consulting, Inc. (Praxis). Contrary to the majority's opinion, I would hold that Praxis, as the firm assigned to recover Omni's subrogation claim, owed a duty of good faith to Kosovan. Therefore, I would reverse the order granting summary judgment in favor of Praxis.

The majority relies on *Keodalah v. Allstate Insurance Company*, 194 Wn.2d 339, 449 P.3d 1040 (2019), to support the conclusion that Praxis is not bound by the duty to exercise good faith in RCW 48.01.030. However, *Keodalah* addressed whether an individual employee of an insurer could be personally liable under the Consumer Protection Act (CPA). *Id.* at 349. The court held "that *employee* adjusters are not subject to personal liability for insurance bad faith or per se claims under the CPA." *Id.* at 353 (emphasis added). This case does not involve an individual employee of an insurer, but rather an assignment of an insurer's subrogation claim to another corporation. Therefore, the law articulated in *Merriman v. American Guarantee & Liability Insurance Company*, 198 Wn. App. 594, 396 P.3d 351, *review denied*, 189 Wn.2d 1038 (2017), is applicable to the facts of this case.

In *Merriman*, Division Three of this court held that the statutory duty of good faith in RCW 48.01.030 has been imposed on the entire insurance industry and, therefore, applied to adjusters contracted to represent an insurer. *Id*. at 611-13. RCW 48.01.030 states:

> The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of insurance.

*Merriman* explained why this statute applied to York Risk Services Group, the adjuster hired by the insurer, American Guarantee & Liability Company:

> As an adjuster contracted by American Guarantee to act as its claims administrator, York was, at all relevant times, a "person" engaged in "the business of insurance" and a representative of American Guarantee.

*Merriman*, 198 Wn. App. at 612. The court held that "RCW 48.01.030 unambiguously applies to insurance adjusters." *Id.*

Here, like York in *Merriman*, Praxis actively engaged in administering the subrogation claim to recover Personal Injury Protection (PIP) benefits paid to Kosovan. Praxis did this because Omni assigned to Praxis its subrogation claim to recover PIP benefits paid to Kosovan. In its letter to United Services Automobile Associate to recover the PIP benefits paid to Kosovan, Praxis plainly represented itself as responsible for administering Kosovan's subrogation claim:

> *Our investigation* of the accident referenced below indicates that liability rests with your insured. *Your files should now reflect that we are handling this file. On behalf of our client* we now turn to you for reimbursement under the provisions of the Personal Injury Protection Law for benefits and expenses incurred by them to date in the amount of $10,000.00.
>
>        . . . .
>
> *Our Insured*    KOSOVAN, ALLA          *Our Claim Number*    2015-96242
>
>        . . . .
>
> *Please make your check payable to Praxis Consulting, Inc.* A/S/O OIC and forward to the address above. *Please include our claim number on your check.*

CP at 134 (boldface omitted) (emphasis added).

Praxis, pursuant to the assignment from Omni, clearly considered Kosovan as its insured, and the claim to be its claim. Thus, Praxis was engaged in the business of insurance as the third-

37

party administrating Omni's subrogation claim. RCW 48.01.030, by its plain language, imposes a duty of good faith on "all persons," including an insurer's representative. Therefore, like York in *Merriman*, Praxis is bound by the duty of good faith in RCW 48.01.030.

Because Praxis is bound by the duty of good faith in RCW 48.01.030, I would reverse the superior court's order granting summary judgment for Praxis. Accordingly, I respectfully dissent in part.

Lee, C.J.